ROHL, Plaintiff in error, v. STATE, Defendant in error.*

*No. State 196.   Argued June 4, 1974.—Decided June 28, 1974.*
(Also reported in 219 N. W. 2d 385.)

---

* Motion for rehearing denied, without costs, on September 4, 1974.

444

446

For the plaintiff in error there were briefs by *Howard B. Eisenberg*, state public defender, and *Ronald L. Brandt*, assistant state public defender, and oral argument by *Mr. Brandt*.

For the defendant in error the cause was argued by *Robert D. Martinson*, assistant attorney general, with whom on the brief was *Robert W. Warren*, attorney general.

BEILFUSS, J. Upon this review the defendant contends:

(1) The conviction cannot stand upon the uncorroborated testimony of an accomplice particularly where, as here, the accomplice recanted her testimony.

(2) The evidence is not sufficient to support the conviction.

(3) The trial court abused its discretion in not granting the motion for a change of venue based upon community prejudice.

(4) A new trial should be granted in the interest of justice.

The state public defender, on behalf of the defendant, acknowledges that the rule in this state is that a jury

can convict upon the uncorroborated testimony of an accomplice. He asks, both in his brief and on oral argument, that we re-examine the rule and provide that corroboration be required. This same argument has been made in several cases in the past few years and in each instance we have declined to alter the rule. As to this issue the public defender made the same argument in *Sass v. State* (1974), 63 Wis. 2d 92, 216 N. W. 2d 22. An examination of the briefs in the *Sass Case* compared to the briefs in this case reveal an almost verbatim argument is made and, in the main, the same authorities from foreign jurisdictions cited. The opinion in *Sass* was announced by this court on April 2, 1974, and a copy of the opinion sent forthwith to the office of the state public defender. This case was argued on June 4, 1974. In the *Sass Case* we stated at pages 95 and 96:

". . . On this record we should decline, if there were no other defects, to re-examine the rule that unsubstantiated testimony of an accomplice is sufficient to sustain a conviction without corroboration. Sass hopefully asks this court to require some corroboration of testimony of an accomplice and claims in part corroboration is required by *Sparkman v. State* (1965), 27 Wis. 2d 92, 133 N. W. 2d 776. Sass misreads *Sparkman*. If an accomplice's testimony is partly corroborated by physical facts or other testimony, such evidence makes the accomplice's testimony more credible but the present rule is that uncorroborated testimony of an accomplice does not need corroboration to be sufficient to sustain a conviction if the finder of the fact finds the testimony credible. This question is not a constitutional or jurisdictional one and consequently was outside the scope of the postconviction remedy of sec. 974.06. Although the trial court denied the motion on its merits, it should have dismissed the petition as being an inappropriate remedy to raise the issue."

We are not persuaded that we should now accept the same argument we considered and rejected less than ninety days ago. The rule remains—a conviction can be

sustained upon the uncorroborated testimony of an accomplice.

Although we have just reaffirmed the rule of a conviction based upon uncorroborated testimony of an accomplice, in this case, like the *Sass Case,* there is some corroboration of the accomplice's testimony. We do believe counsel's argument to the contrary cannot stand based upon a fair appraisal of the record.

The defendant argues that the flashlight which was supposedly left behind was not introduced at the trial. While it is true that it was not introduced, there was testimony at the trial that a flashlight did appear in a picture of the scene of the crime.

The defendant states that the bloody clothing was never introduced at trial. This again is true, but defendant's father gave a signed statement to police stating that he had found a blue shirt belonging to the defendant and a gray vest belonging to Randy in the family garbage can and that both appeared to have brown spots on them; that he told his wife about this and that when he looked later the clothes were gone. That shortly after this the defendant said to him, "if you squeal on me, I'll kill you." This statement would also explain Mr. Rosinsky's failure to testify to such matters at the trial, in addition to such other pressures as being forced out of his home by his wife. He did, however, state during his testimony that they (presumably Marvin and Randy) had had the bloody murder club over the TV for two weeks. This coincides with the girl's story that the defendant's mother gave her the pole two weeks after the murder which she, in turn, gave to Dennis St. John. The fact that St. John denied receiving the pole or any of the stolen loot is not surprising in view of the fact that such evidence could be considered as incriminating him.

Miss Nelson's story is also corroborated by the statement of Frank Rebarchek, Jr., who testified that he

talked to defendant and Randy on July 3, 1972, and that "the defendant talked about knocking out an old lady . . . for money." The defendant insinuates that this referred to a swindle of Mrs. Zeeman on the same day in which Rebarchek had participated. It seems highly unlikely that the witness would not know what they were talking about.

While Dr. Fodden stated that in his opinion and to a reasonable degree of medical certainty the injuries to the victim's head and chest were not caused by the wooden pole, he did admit that the injuries to the chest "could have been."

The defendant also points to certain inconsistencies such as the difference between the $65 missing from the victim's home and the $53 that the girl said she was given to hold, and the fact that the defendant was said to have entered through the front door when her son stated that the victim had a habit of locking the front door after they left. These possible discrepancies seem minimal and would only go to the weight of the testimony.

The situation in this case is similar to that in *State v. Haugen* (1972), 53 Wis. 2d 339, 343, 344, 193 N. W. 2d 50, where this court stated:

> "It is clear the jury believed the testimony of John Ball, supported by some of the surrounding facts and circumstances, but weakened by other facts in this record. It is as clear the jury did not believe the testimony of Roger Haugen, supported by some, but not all, of the surrounding facts and circumstances. The issue is one of comparative credibility, and in this state the jury had '. . . great latitude in determining the credibility of the witnesses and the weight of the testimony. . . .' (*State v. Richardson* (1969), 44 Wis. 2d 75, 77, 170 N. W. 2d 775.) Also, the trial court, which shared with the jury the opportunity to observe the witnesses on the witness stand, their demeanor and manner of testifying, by denying motions after verdict, found that the jury could '. . . acting reasonably be convinced beyond reasonable doubt

of such guilt from the evidence. . . .' (*State v. Richardson, supra,* at page 77.)

"On the appeal in a criminal case of a jury verdict and court judgment, an appellate court is not to sit itself in a successor jury box and decide what verdict it would or could agree upon on the testimony offered. This would substitute the cold type of a transcribed record for the whole process of question-and-answer, action-and-reaction and words-plus-demeanor that constitute a trial. It is the inherent limitations of dependence upon transcript and argument that has led this court to state that: ' ". . . The test is not whether this court is convinced of the guilt of the defendant beyond a reasonable doubt. . . ." ' (*State v. McCarty* (1970), 47 Wis. 2d 781, 790, 177 N. W. 2d 819) ; and that '. . . only when the evidence that the trier of fact has relied upon is inherently or patently incredible that the appellate court will substitute its judgment for that of the fact finder, who has the great advantage of being present at the trial.' (*Gauthier v. State* (1965), 28 Wis. 2d 412, 416, 137 N. W. 2d 101, certiorari denied, 383 U. S. 916, 86 Sup. Ct. 910, 15 L. Ed. 2d 671.) We cannot hold that the testimony supporting conviction in this case is inherently or patently incredible. Even if it were to be considered entirely uncorroborated testimony of an accomplice to a crime, it would be '. . . competent evidence upon which to base a verdict of guilty if it is of such a nature that it is entitled to belief and the jury believes it. . . .' (*Sparkman v. State* (1965), 27 Wis. 2d 92, 95, 133 N. W. 2d 776.) . . ."

After reviewing the record, we find the evidence that could be relied upon by the jury was neither patently nor inherently incredible and that the evidence adduced, believed and rationally considered by the jury was sufficient to prove the defendant's guilt beyond a reasonable doubt on both counts. *Voigt v. State* (1973), 61 Wis. 2d 17, 20, 211 N. W. 2d 445.

The most meritorious contention made by the defendant is that the accomplice, Sue Nelson, on occasions after the preliminary examination and before trial, and again after trial, recanted her testimony and that her trial testimony

is not credible. We discussed the issue of recanting in *Nicholas v. State* (1971), 49 Wis. 2d 683, 694, 183 N. W. 2d 11, and stated:

"In *Zillmer v. State* (1968), 39 Wis. 2d 607, 616, 159 N. W. 2d 669, this court reiterated with approval the already well-established rule that a new trial may be based on an admission of perjury only if the facts in the affidavit are corroborated by other newly discovered evidence. Here the defendant is unable to point to any 'other newly discovered evidence' which would corroborate the affidavit of William Ashford.

"We conclude that recanting affidavits, standing alone, are of no legal significance."

The affidavit recanting Miss Nelson's testimony at the preliminary hearing was made before the trial. This affidavit was presented to the jury at trial and extensively argued. As to the recantation after trial, that consists of only a transcript of a conversation which allegedly took place between Sue Nelson and Attorney Kaminski and it is not even a sworn affidavit. The jury obviously chose to believe Sue Nelson's testimony on oath at trial and not the recanting affidavit. This was properly within its province as the trier of fact. The transcribed conversation about recantation is not under oath and there is no new evidence offered to support it. Such clearly falls below the requirements stated in *Nicholas v. State, supra.*

The trial judge is in a much better position to resolve the credibility and the weight to be given a recanting statement. He stated in deciding the postconviction motion:

"One significant thing about Sue Nelson's stories is that whenever she told a story under oath her story was consistent and whenever she was under the influence of her friend, Cindy Rosinsky or other members of that family, then she came up with a story that, no, this wasn't true at all, and each time I believe that she told a story

consistent with innocence or lack of knowledge on her part, in the background was some member of the Rosinsky family and it was stated that they had done something to induce her to tell the story consistent with her lack of knowledge."

We are of the opinion that there is sufficient evidence in the record that the jury could accept as credible which sustains the convictions both as to third-degree murder and arson, and the trial court did not abuse its discretion in denying the motion for a new trial upon the recantation issue nor the sufficiency of the evidence.

The defendant contends the trial court abused its discretion in denying defendant's motion for a change of venue. He cites *Thomas v. State* (1972), 53 Wis. 2d 483, 192 N. W. 2d 864, which provides that the proper standard to apply was whether there was a "reasonable probability of prejudice inherent in the situation." We believe the trial court used that same standard in its decision denying defendant's motion for change of venue.

Furthermore, this court stated in *Thomas, supra,* at page 492:

"The type of news is important in the claim of potential prejudice. Uneditorialized news of purely informational nature may inform possible members of a jury but such news does not necessarily create prejudice. An informed jury is not necessarily a prejudicial one. There is no claim here of editorialized news, of rabble rousing, or of an attempt to form public opinion against black men who attempt to murder white policemen. There was no massive news coverage or daily repetition to excite the public. We think the evidence in this case was insufficient to require a change of venue."

The record contains the news stories and pictures which defendant offers in support of this contention. These are clearly objective uneditorialized news reports and no evidence is offered to show any further effect than what appears on their face. We take notice from the

record on file in this court that the defendant's brother, a coactor in all the relevant events, was granted a change of venue to Marinette county. A jury in that county, on substantially the same evidence, found the brother guilty of first-degree murder and arson. The conviction of the brother, of course, is not final by virtue of his appeal on file here and because there may be variances in the evidence. However, it does seem fair to conclude that the Manitowoc jury that convicted the defendant here of a lesser offense could hardly have been motivated by community prejudice. We conclude the trial court did not abuse its discretion in denying the motion to change the venue.

Lastly, defendant submits that this court should grant him a new trial in the interest of justice. There is nothing in this record to lead us to believe that justice has probably miscarried or that a new trial would lead to a different result.

*By the Court.*—Judgment and order affirmed.