Marvin ROHL, a/k/a Marvin Rosinsky, Plaintiff in error, v. STATE, Defendant in error.†

Court of Appeals

*No. 78–121–CR. Submitted on briefs February 22, 1979.—*
*Decided April 6, 1979.*
(Also reported in 279 N.W.2d 722, 279 N.W.2d 731.)

† Petition to review granted.

20

22

24

For the plaintiff in error the cause was submitted on the brief of *Howard B. Eisenberg,* state public defender, *Ronald L. Brandt,* deputy state public defender, and *Ron A. Kaminski* of Manitowoc. A supplemental brief was submitted by *Stephen M. Glynn* of *Shellow & Shellow* of Milwaukee.

For the defendant in error the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general and *Kirbie Knutson,* assistant attorney general.

Before Moser, P.J., Brown, J., and Bode, J.

BROWN, J. On July 10, 1972, Mary Glander was found dead in her apartment. After an investigation had been conducted and an autopsy performed, it appeared that Mary Glander had died as a result of blows to the heart and chest area, and that a fire had been set after she had suffered the blows. There was also evidence of robbery or theft.

On July 11, 1972, the police received a telephone call from the father of the plaintiff in error, Marvin Rohl, (the defendant) informing them that he believed Marvin and another son, Randall Rohl, were involved in the crime. The next day the police obtained a search warrant and searched Marvin and Randall's residence. No evidence of the crime, however, was discovered. Shortly after the search, the police questioned Sue Nelson, a friend of Marvin's sister. She told the police that Marvin had shown her a bloody stick that was used to hit Mrs. Glander. She claimed that the stick was in Marvin's bedroom closet. A subsequent search was conducted, but no stick was ever found. However, based on Sue Nelson's statements of conversations that she allegedly had with Marvin and her statement that Marvin had shown her the stick, Marvin was arrested, and on July 29, 1972 charged with first-degree murder, arson, robbery and sexual perversion.

After the preliminary hearing, the sexual perversion count was dismissed, and the defendant was bound over for trial on the other three charges.

A trial was held beginning October 30, 1972, and on November 4, 1972, the jury returned verdicts of guilty of third-degree murder, arson and robbery. A motion for a new trial was made on December 2, 1972. The trial

court dismissed the robbery charge, denied the motion for a new trial and entered a judgment of conviction on third-degree murder and arson. The defendant was sentenced to twenty (20) years on the third-degree murder charge and five (5) years on the arson charge, the sentences to run consecutively. The convictions were affirmed by the Wisconsin Supreme Court in *Rohl v. State,* 64 Wis.2d 443, 219 N.W.2d 385 (1974), *rehearing denied,* September 4, 1974.

On May 15, 1977, a petition for post-conviction relief was filed pursuant to sec. 974.06, Stats., which alleged that Sue Nelson had acknowledged committing perjury in her trial testimony. The motion was accompanied by Miss Nelson's sworn affidavit in which she admitted perjury in all material respects of her trial testimony. She asserted that she had taken a polygraph examination which confirmed the truth of her perjury admissions.

After the post-conviction motion was filed, the district attorney and the police department were ordered to give defense counsel access to all the records in the case. The defense counsel later learned that a silver flashlight found at the scene of the crime was the property of the victim, Mrs. Glander. Accordingly, on November 22, 1977, an amended petition was filed by the defendant alleging that exculpatory evidence had not been turned over to the defendant at trial, and that consequently the defendant had been denied his constitutional right to due process. The amended petition was later supplemented by an affidavit of Patrick J. Harlow, the assistant prosecutor in the defendant's trial. The affidavit stated that Mr. Harlow knew prior to trial that the flashlight found at the scene and depicted in a photograph introduced at trial was the property of the victim, and had been returned to the victim's son and daughter-in-law without ever being submitted to the Wisconsin State Crime Laboratory. This fact was never disclosed to the defendant.

The defendant's post-conviction motions, as amended, alleged that the State's use of perjured testimony and its failure to produce exculpatory evidence had deprived the defendant of a fair trial and due process of law. Following a hearing to determine whether an evidentiary hearing was appropriate, the circuit court rejected the defendant's request for an evidentiary hearing and denied the motions for post-conviction relief. The defendant is appealing from both the order denying an evidentiary hearing and the order denying the motion for a new trial.

The defendant has raised the following issues on appeal:

(1) Did the trial court err in denying the defendant a new trial based on the evidence in the record showing that the State had failed to produce exculpatory evidence at trial?

(2) Did the trial court err in denying the defendant an evidentiary hearing on whether the defendant was entitled to a new trial due to prosecutorial misconduct?

(3) Did the trial court err in denying the defendant an evidentiary hearing on whether the defendant's conviction was based on perjured testimony?

## FAILURE TO PRODUCE EXCULPATORY EVIDENCE

On a motion under sec. 974.06, Stats., the defendant has the burden of proving that he is entitled to relief. Sec. 974.06(6), Stats. The defendant is only entitled to relief if he can show by clear and convincing evidence, *State v. Carlson*, 48 Wis.2d 222, 230, 179 N.W.2d 851, 855 (1970); *State v. Reppin*, 35 Wis.2d 377, 385, 151 NW2d 9, 13 (1967), that the judgment was rendered without jurisdiction or that the sentence imposed was not authorized by law or is otherwise open to collateral attack, or that there has been such a denial or infringement of the

constitutional rights of the defendant as to render the judgment vulnerable to collateral attack, sec. 974.06(3)(d), Stats. In this case, the defendant has alleged that he is entitled to a new trial because there has been such a denial or infringement of a constitutional right that the judgment is vulnerable to collateral attack. He has alleged that prior to, during, and for six years after his trial the State failed to disclose exculpatory evidence material to guilt or innocence which resulted in a denial of a fair trial and due process of law under the fourteenth amendment to the United States Constitution and article I, section 8 of the Wisconsin Constitution. This allegation, if proven, entitles the defendant to a new trial under sec. 974.06(3)(d), Stats.

Suppression of evidence or information favorable to an accused has long been held to violate due process when the evidence is material to guilt or innocence, irrespective of the good faith or bad faith of the prosecution. *Giglio v. United States*, 405 U.S. 150, 154 (1972); *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *State v. Amundson*, 69 Wis.2d 554, 577, 230 N.W.2d 775, 787 (1975); *Nelson v. State*, 59 Wis.2d 474, 479, 208 N.W.2d 410, 412 (1973). The exculpatory evidence, however, must be in the exclusive knowledge or control of the State before it will be considered suppressed. *State v. Calhoun*, 67 Wis.2d 204, 212–17, 226 N.W.2d 504, 507–10 (1975); *Lampkins v. State*, 51 Wis.2d 564, 575–76, 187 N.W.2d 164, 170 (1971); *State v. Clarke*, 49 Wis.2d 161, 179, 181 N.W.2d 355, 364 (1970).

Thus, the defendant is entitled to a new trial if he has shown by clear and convincing evidence that:

(1) the State failed to produce some evidence;
(2) the evidence not produced was in the sole knowledge or control of the State;

(3) the evidence was favorable to the defendant; and
(4) the evidence was material to guilt or innocence.

The record and files in this case show the following. On the first day of trial, the State introduced several photographs of Mrs. Glander's apartment after she was found dead. One of the photographs introduced by the State was a picture of a dresser with the drawer open. The photograph showed that the contents of the dresser drawer had been ransacked, and on top of the contents in the drawer was a silver flashlight. Several days later, just before the State's chief witness, Sue Nelson, took the stand to testify, the State asked that the pictures be given to the jury and circulated. Sue Nelson then took the stand and began testifying. She testified that at about 2 a.m. on July 10, 1972 she went over to the defendant's home and met the defendant, his brother Randy and his sister Cindy. They met in the driveway and proceeded to walk to Washington Park across the street from Mrs. Glander's apartment.

The prosecutor then asked Sue Nelson the following questions:

Q. Do you recall if anybody was carrying anything?
A. Yes.
Q. And who was carrying something?
A. Randy.
Q. And what was he carrying if you recall?
A. A flashlight and a pole.
Q. And can you describe that flashlight for us?
A. It was silver—that's all I know.

She then testified that Marvin and Randy went across the street into Mrs. Glander's apartment. After they came out they returned to the park where she and Cindy were waiting. The prosecutor then asked her the following question:

Q. Sue, you testified before that on the way over to the park Randy was carrying a flashlight and a pole.

Did you see such a flashlight after the defendant and his brother came from the Glander house?

A. No.

Later in her testimony, Sue testified that about four weeks before the trial, Mrs. Rosinsky, the defendant's mother, had asked her to go back to Mrs. Glander's apartment and get the flashlight that Marvin and Randy had left there.

This testimony, together with the photograph which had been shown to the jury shortly before Sue's testimony, created the strong inference that the flashlight depicted in the photograph was the flashlight Randy had allegedly carried into Mrs. Glander's apartment. The flashlight in the picture fit the description given by Sue Nelson. The flashlight in the picture was on top of the contents in the drawer. This inference was false, and even though the State knew it was false,[1] the State remained silent and made no effort to correct or dispel the inference.

It was also clear throughout the trial that the defendant considered the ownership of the flashlight to be extremely important to his case.

From the beginning of the trial, the defendant attempted in vain to establish that the flashlight belonged to the victim and was not in any way connected to the alleged crimes. On the very first day of trial, Mrs. Glander's daughter-in-law was asked on cross-examination if Mrs. Glander owned a flashlight. The daughter-in-law

[1] There were two prosecutors in this case, Mr. Deehr and Mr. Harlow. While the record does not indicate whether Mr. Deehr had personal knowledge of the ownership of the flashlight, his personal knowledge is irrelevant. The prosecutor's office is an entity and as such is the spokesman for the State. The knowledge of one prosecutor (Mr. Harlow) of exculpatory evidence is the knowledge of the State. *See Giglio v. United States*, 405 U.S. at 154.

testified that she did not know. When shown the photograph depicting the flashlight, she testified that she knew the flashlight was there when they cleaned up the apartment after the crimes, but she did not know to whom the flashlight belonged. Later in the trial, Sue Nelson was asked time and again about her statement that Mrs. Rosinsky had asked her to retrieve the flashlight. Mrs. Rosinsky was called and denied ever telling Sue Nelson anything about a flashlight. The importance of the ownership of the flashlight was clear to the defendant, and yet the State remained silent about any knowledge they had of the ownership of the flashlight found at the scene and depicted in the photograph.

If the exculpatory nature of the ownership of the flashlight and the probability that an inference would be made from Sue Nelson's statement and the picture that the flashlight belonged to the defendant was not clear during trial, it became abundantly clear on appeal. In affirming the defendant's conviction on appeal, the supreme court held that Sue Nelson's testimony, while sufficient in and of itself to convict the defendant if the jury chose to believe it, was also corroborated by other evidence. They pointed to the fact that a flashlight did appear in a picture of the scene of the crime, and while the flashlight was never produced at trial, the jury could infer from the picture and Sue Nelson's testimony that the flashlight belonged to the defendant, thereby placing him at the scene of the crime. *Rohl v. State,* 64 Wis.2d at a 450, 219 N.W.2d at 387–88. Thus, not only could the inference have been made by the jury to convict the defendant, but the inference was used to affirm the defendant's conviction. Yet, when the defendant petitioned for a rehearing to correct this inference, the State still remained silent.

It wasn't until after a post-conviction motion was filed six years later and an order was issued requiring the

police and the prosecutor to open the case files for inspection by the defendant's lawyer, that anyone learned that the flashlight, in fact, belonged to the victim and not the defendant. At that point, the defendant amended his post-conviction motion and procured the affidavit from Mr. Harlow. Despite this undisputed information, the trial judge denied both the defendant's request for an evidentiary hearing and the motion for a new trial. The trial court ruled that the motion, files and records in the action conclusively showed that, regardless of the facts presented or which could be presented at an evidentiary hearing, the defendant would not be entitled to any relief. We disagree. We think these facts show by clear and convincing evidence that the defendant was denied due process of law and is entitled to a new trial.

### A. *The State failed to produce some evidence.*

The record in this case clearly shows, and the State admits, that at no time did the State ever inform the defendant that the flashlight found at the scene of the crime and depicted in the photograph was the victim's flashlight, it had not been sent to the crime lab for analysis, and was, in fact, returned to the victim's family long before trial. This evidence was not discovered until six years after the defendant's conviction and even then only after the police and the prosecutor were ordered to open their files to the defense counsel for inspection.

### B. *The evidence was in the sole knowledge and control of the State.*

The record also amply shows, and the State admits, that the evidence relating to the ownership of the flashlight was within the sole knowledge and control of the State. The prosecutor in charge of the investigation, Mr.

Harlow, was the only person who had knowledge that the flashlight depicted in the picture was not sent to the crime lab for testing, was identified as the victim's flashlight and was returned to the victim's family. The defendant attempted to discover information relating to the ownership of the flashlight. He had made a request for all exculpatory evidence. The trial court had informed the prosecutor, Mr. Harlow, of his obligation under *Brady* to disclose exculpatory evidence. At trial, the defendant's attorney questioned the victim's daughter-in-law about the ownership of the flashlight depicted in the photograph. Under the test set forth in *State v. Calhoun*, 67 Wis.2d at 212–17, 226 N.W.2d at 507–10, the evidence was in the sole knowledge or control of the State.

## C. *The evidence was favorable to the defendant.*

The evidence in the record was sufficient to establish, and the State admits, that the information relating to the ownership of the flashlight was favorable to the defendant. Sue Nelson testified that the defendant entered Mrs. Glander's apartment with a silver flashlight and twenty minutes later came out without it. The flashlight in the picture fit the description Sue Nelson gave of the flashlight the defendant was carrying when he entered Mrs. Glander's apartment. Had the defendant known that the flashlight in the picture belonged to the victim and the jury had been informed of that fact, at the very least this knowledge would have dispelled any inference the jury could make that the flashlight in the photograph belonged to the defendant and was left there in haste. Evidence dispelling that inference was clearly favorable to the defendant.

The State also admits that the nondisclosed evidence might have undermined Sue Nelson's credibility. Sue Nelson was the State's chief witness and the only witness connecting the defendant to the crimes. Any evidence which might undermine her credibility would have been favorable to the defendant and should have been disclosed. *Giglio v. United States*, 405 U.S. at 154; *Tucker v. State*, 84 Wis.2d 630, 641, 267 N.W.2d 630, 636 (1978); *Nelson v. State*, 59 Wis.2d at 481, 208 N.W.2d at 413.

D. *The evidence was material to guilt or innocence.*

In determining whether nondisclosed evidence was sufficiently material to guilt or innocence to amount to a denial of due process under *Brady,* we must consider two factors: (1) whether the prosecutor had notice that the evidence was exculpatory and (2) the nature of the nondisclosed evidence. *See United States v. Agurs,* 427 U.S. 97 (1976); *Tucker v. State,* 84 Wis.2d at 642–43, 267 N.W.2d at 636–37.

Generally, the prosecutor receives notice that some evidence is important when the defendant makes a specific request for evidence. However, in some situations, a specific request is not necessary. As the court said in *Agurs,* "there are situations in which evidence is obviously of such substantial value to the defense that elementary fairness requires it to be disclosed even without a specific request." 427 U.S. at 110. When the nature of the evidence itself gives the prosecutor notice that the evidence is valuable to the defendant's case, no specific request is necessary. The standard for materiality under *Brady* is then the same as if a specific request had been

made—it is sufficiently material unless we are convinced beyond a reasonable doubt that it would not have affected the jury's verdict if it had been disclosed. *See United States v. Agurs,* 427 U.S. at 104–06; *Tucker v. State,* 84 Wis.2d at 642, 267 N.W.2d at 636–37.

.The nondisclosed evidence in this case was obviously of substantial value to the defendant. It could have dispelled an inference that placed the defendant at the scene of the crime. Furthermore, aside from Sue Nelson's testimony, it was the only uncontradicted evidence that connected the defendant to the scene of the crimes. As such, the evidence was highly material to the guilt or innocence of the defendant, particularly in light of the numerous conflicting statements Sue Nelson had given. The State knew prior to trial that Sue Nelson's credibility would be seriously questioned and attacked. The State may not have known prior to trial how significant or important the ownership of the flashlight would be. However, once the State saw the defendant attempting in vain to discover the true ownership of the flashlight and once Sue Nelson had testified creating the inference which placed the defendant at the scene, the State knew or should have known that the ownership of the flashlight had substantial value to the defendant. The photograph, along with Sue Nelson's testimony, created an inference that the flashlight in the photograph belonged to the defendant and was left there by him in his haste to leave the scene of the crime. This inference was false. The State knew or should have known that the false inference could have been drawn by the jury, and thus, the State had a duty to correct it. *Giglio v. United States,* 405 U.S. at 153; *Napue v. Illinois,* 360 U.S. 264, 269–70 (1959). As the Supreme Court stated in *Napue:*

[I]t is established that a conviction obtained through use of false evidence, known to be such by representatives of

the State, must fall under the fourteenth amendment
. . . . The same result obtains when the State, although
not soliciting false evidence, allows it to go uncorrected
when it appears. . . .

. . . "A lie is a lie, no matter what its subject, and, if it
is in any way relevant to the case, the district attorney
has the responsibility and duty to correct what he knows
to be false and elicit the truth. . . . That the district
attorney's silence was not the result of guile or a desire
to prejudice matters little, for its impact was the same,
preventing, as it did, a trial that could in any real sense
be termed fair." [Citations omitted.] 360 U.S. at 269–70.

When presenting evidence, the State must be mindful
of the inferences that can be drawn from the evidence
it presents. If the evidence presented might create a
false inference, the State has a duty to correct that in-
ference even if the State did not knowingly and inten-
tionally create the inference. In this case, the State's evi-
dence created a false inference. This inference placed the
defendant at the scene of the crime, and as such, it was
highly prejudicial to the defendant. As a result, the non-
disclosed evidence, which could have negated this infer-
ence, was obviously of substantial value to the defendant
and should have been disclosed. We cannot say beyond a
reasonable doubt that the false inference did not affect
the jury. Therefore, the nondisclosed evidence was suf-
ficiently material under *Brady*.

Furthermore, we believe the evidence in this case was
sufficiently material under the stricter test in *Agurs*.
When the prosecutor is not given notice, either by a spe-
cific request or because the evidence was obviously of
substantial value to the defendant, the nondisclosed evi-
dence will not be considered sufficiently material unless
the reviewing court can conclude that the nondisclosed

or suppressed evidence creates a reasonable doubt as to the defendant's guilt that did not exist otherwise.

If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt. *United States v. Agurs,* 427 U.S. at 112–13.

While we do not think the undisclosed evidence in this case was of minor importance to the defendant, the newly discovered or nondisclosed evidence creates a reasonable doubt that did not otherwise exist.

The evidence in this case, if believed by the jury, was sufficient to convict the defendant. However, even with the false inference it was a close case. Without this inference placing the defendant at the scene of the crime, we think the scales of justice shift creating a reasonable doubt that did not otherwise exist.

There was ample evidence presented by the State that the crimes involved in this case were committed by someone. However, the only evidence connecting the defendant to the crimes was the testimony of Sue Nelson who, at the time, was fourteen years old. She testified that the defendant and his brother entered the victim's apartment with a stick and a flashlight. They returned with the stick but without the flashlight. The stick looked like it had blood on it. She also testified that the defendant told her that Randy had hit the victim with the stick. Yet, the pathologist testified that the blows to the victim were caused by a very firm but somewhat resilient object such as a bag of sand, gloved knuckles or a karate chop. A stick was not mentioned.

Sue testified that the defendant had shown her the stick which was in the defendant's apartment for two

weeks after the crimes were committed. Yet, when the police searched the defendant's apartment on a number of occasions shortly after the crimes were committed, no stick was ever found.

Sue testified that approximately two weeks after the crimes were committed, the defendant gave her the stick which she then gave to a man named Dennis St. John. Yet, St. John testified that Sue Nelson never gave him a stick, and when the police searched St. John's apartment, no stick was found.

Sue Nelson also testified that on the night of the crimes the defendant gave her some jewelry and $53 allegedly taken from the victim. She testified that she gave this money and jewelry to St. John. Yet, the amount allegedly taken from the victim's home was $65 not $53, and St. John denied that Sue ever gave him any jewelry or money. When St. John's apartment was searched neither the money nor the jewelry were found.

She testified that when the defendant returned from the victim's apartment, he had blood on his shirt. No clothes were ever found with blood on them.

Sue Nelson testified that when the defendant entered the victim's apartment, he entered through the front door. Yet, the victim's son testified that the victim was in the habit of locking that door. Furthermore, when the downstairs neighbor noticed the fire and went upstairs to check on the victim, the front door was locked from inside.

Lastly, Sue Nelson testified that three or four weeks prior to the trial, the mother of the person she was testifying against—the defendant—had asked her to return to Mrs. Glander's apartment and get the flashlight that the defendant and his brother had left there. This supposedly took place some three months after the crimes were committed and long after the victim's family had cleared

out and closed up the victim's apartment. Mrs. Rosinsky also denied asking Sue Nelson to do any such thing.

It should also be noted that throughout these proceedings, Sue Nelson had given numerous conflicting stories. At one point during the preliminary hearing, the State had to request that their chief witness be declared a hostile witness.

A statement by the defendant's father was also introduced in which he stated that he found a bloody shirt in the garbage can. At trial, however, the father testified that on the night he supposedly gave that statement to the police, he was drunk, had taken a lot of pills, and he did not recall giving that statement to the police. He also testified that he often blamed his sons for things they did not do, and had in the past turned his sons in to the police for crimes they did not commit. He also testified that he never found any bloody shirts in the garbage can.

The State argues, nevertheless, that the father's testimony corroborated Sue Nelson's testimony because he stated that the bloody pole was over the television for two weeks. The State contends that this statement is consistent with Sue's statement that the defendant gave her the pole about two weeks after the crimes were committed. If the father's testimony is reviewed carefully, however, his statement does not necessarily corroborate Sue Nelson's testimony. The only reference to the pole being "over the TV" was the following statement made by the father during trial.

Q. State whether or not the clothing that you took to the police was your own clothing?

A. The clothes they brought up was the bag from my winter clothes that Judy Blaschka threw it out, and here's the bloody murder club and everything. They had it over the tv for two weeks, . . . .

The term "they" was never explored, and while it could be interpreted to mean the defendant and his brother, it also could be interpreted to mean the bloody murder club the newscasters were referring to in their broadcasts during the two weeks following the crime. This latter interpretation would have been consistent with the fact that the police never found a bloody club when searching the defendant's apartment several times shortly after the crimes were committed. Since there were two possible interpretations of this statement, we cannot say that the father's statements corroborated Sue Nelson's testimony or that the jury interpreted it as corroborating Sue Nelson's testimony.

Thus, the only unambiguous and uncontradicted evidence that went to the jury was that a flashlight was found at the scene of the crime matching Sue Nelson's description of the flashlight that the defendant and his brother took into the victim's apartment and returned without. While the fact that the flashlight actually belonged to the victim does not necessarily prove that Sue Nelson was lying or that the defendant was not guilty of the crimes, we believe that had the jury known the true ownership of the flashlight, their verdict may have been different. The nondisclosed evidence was, therefore, sufficiently material to the defendant's guilt or innocence.

Having concluded that the files and records in this case show by clear and convincing evidence that the State failed to produce exculpatory evidence within its sole knowledge and control which was material to the defendant's guilt or innocence, the defendant was denied his constitutional right to a fair trial and due process of law under the fourteenth amendment to the U. S. Constitution and article I, section 8, of the Wisconsin Constitu-

tion. Consequently, the trial court erred in denying the motion for a new trial.

In light of our disposition of the first issue raised by the defendant, we need not address the remaining issues.

*By the Court.*—Orders reversed and cause remanded with directions to grant the defendant's motion for a new trial, vacate the judgment of conviction, and order that a new trial be held within a reasonable time or that the defendant be released from custody.

Before Voss, P.J., Brown, J., and Bode, J.

VOSS, P.J. The petitioner, Marvin Rohl, has filed a petition with this court requesting that he be released from custody and placed on bail pending a new trial. As grounds for his relief, he claims that he is being unlawfully held under a judgment of conviction which this court held in *Rohl v. State,* Case No. 78–121–CR (Ct. of Appeals, decided April 6, 1979), was obtained in violation of his constitutional rights to a fair trial and due process under the fourteenth amendment. He, therefore, claims he is entitled to be placed on bail pending a new trial. He has requested that bail be set in the sum of ten thousand ($10,000) dollars with permission to post ten (10%) percent cash.

In *Rohl v. State, supra,* this court did hold that the defendant's conviction was obtained in violation of his constitutional rights. We ordered the judgment vacated and a new trial. When a judgment is vacated, the defendant is in the same position that he was prior to trial. *State v. Pohlhammer,* 78 Wis.2d 516, 254 N.W.2d 478, 82 Wis.2d 1, 260 N.W.2d 678 (1978). He is, therefore, entitled to pretrial bail pursuant to sec. 969.01, Stats. Ordinarily, bail pending a new trial would be set by the trial court. However, the trial court has no juris-

diction to act until it receives the remittitur in this case. *State v. Neutz*, 73 Wis.2d 520, 243 N.W.2d 506 (1976). The judgment and opinion in this case is not transmitted to the trial court for thirty-one days after the decision of this court. Sec. 809.26, Stats. Until the remittitur is sent to the trial court, the trial court has no final decision upon which it could determine whether the defendant is entitled to bail. While the State conceded at oral argument that the trial court has no jurisdiction to act until it receives the remittitur, it argued that thiry-one days was not an unreasonable time for the defendant to wait in prison until the trial court regains jurisdiction. The State claims that this time period was intended to permit them to petition for review and that in the meantime the legislature deemed the thirty-one days to be a reasonable time to hold the defendant in custody until either a petition for review is filed or the remittitur is sent back to the trial court at which time the defendant could move the trial court for bail pending a new trial. We do not feel that even one day is a reasonable amount of time to hold a defendant in prison unlawfully. The defendant, in this case, has been in prison for seven years. His conviction has been held constitutionally infirm. To accept the proposition that the defendant must simply sit in prison under an invalid conviction for at least thirty days is unconscionable.

In addition to the fact that the trial court has no jurisdiction in this case until it receives the remittitur, even if the remittitur had been received by the trial court, counsel for both parties informed this court at oral argument that there is no trial judge at the present time to hear a motion for bail. Under sec. 808.07 (2) (a) 3., Stats., both the trial court and the appellate courts have the authority to make any order appropriate to preserve the effectiveness of a judgment subsequently to be entered.

While ordinarily these motions should be made in the trial court, they may be made in the appellate court if it is impractical to seek relief in the trial court. Sec. 809.12, Stats. The trial judge who decided the post-conviction motion claimed that he had no jurisdiction to grant bail. The Chief Judge of Manitowoc County, Judge Deehr, was the prosecutor in the case at trial, and all other judges have recused themselves. While a new judge could be assigned to hear the motion, this again would take time. Meanwhile, the defendant remains in prison. Under these circumstances, we feel that we have the jurisdiction to grant the defendant relief. Until the remittitur is sent back to the trial court, or until a petition for review has been filed in the supreme court, this court retains jurisdiction of the case. *See, State v. Neutz*, 73 Wis.2d at 523, 243 N.W.2d at 508. This court has the power and authority to enforce its judgments and determinations and to exercise its jurisdiction. Sec. 752.37, Stats. This is the case particularly where there is no other court with jurisdiction to enforce our judgments. The petition for release on bail pending a new trial is a request to this court to enforce our judgment that the defendant's conviction was unconstitutionally obtained and that he is entitled to a new trial. Being entitled to a new trial, he is entitled to bail pending a new trial and new conviction. Sec. 969.01(1), Stats. This court has the authority to issue all writs necessary in aid of its jurisdiction. Sec. 752.01(3), Stats. Therefore, we feel we have the jurisdiction and authority to grant the defendant's request for bail pending a new trial.

The State has argued that the defendant's petition is not a petition for bail pending a new trial but rather a petition for bail pending appeal which must be brought in the trial court pursuant to sec. 809.31, Stats. *State v. Whitty*, 86 Wis.2d 380, 389, 272 N.W.2d 842, 846 (1978).

In *State v. Whitty,* the defendant had been convicted in the circuit court and had filed an appeal from that conviction with this court. He sought bail pending the decision by this court on his appeal. The supreme court held that where an appeal was pending in either the court of appeals or the supreme court, the motion for bail pending appeal must be made first in the trial court. In this case, however, there is no appeal pending. This court has issued its decision on the appeal in *Rohl v. State, supra,* which decision is a final determination. No petition for review has been filed with the supreme court. Furthermore, the State does not have an appeal to the supreme court as of right. Secs. 808.10 and 809.62, Stats.[1] Therefore, there is no appeal pending, and the motion for bail is not a motion for bail pending appeal. It is a motion for bail pending a new trial.

Lastly, even assuming we do not have the authority to grant bail pending a new trial under secs. 752.01, 752.37 and 969.01(1), Stats., we feel we have the authority to grant the defendant's relief pursuant to sec. 809.51, Stats. We also note that if this court has no jurisdiction to grant the defendant's requested relief based on the petition filed in this case, his remedy would be recognizable as a writ of habeas corpus, which this court does have the jurisdiction to issue. Sec. 292.03, Stats.

---

[1] We cannot accept the position of the State that the appeal is still pending until the thirty days have elapsed during which they may petition for review. If this were the case, a decision by the Wisconsin Supreme Court would not be final and would still be a pending appeal until ninety days had elapsed during which an aggrieved party could petition for a writ of certiorari to the United States Supreme Court. We do not believe that an appeal is still pending after a decision has been rendered simply because the aggrieved party has a period of time during which it may bring a petition for review, the granting of which is discretionary on the part of the reviewing court. This may not be true where the aggrieved party has an appeal as of right, but here the State has no appeal as of right.

While the petition the defendant filed with this court was not a writ of habeas corpus, we could treat it as such and grant the defendant's requested relief. *State ex rel. Furlong v. Waukesha County Court*, 47 Wis.2d 515, 177 N.W.2d 333 (1970). Because we felt that we did have the authority to grant the defendant's requested relief, however, we did not treat his petition as a writ of habeas corpus. Such writs are available only when all available remedies have been exhausted.[2]

In view of the fact that the defendant is being held under a judgment of conviction which was obtained in violation of his constitutional rights, and there being no trial court with jurisdiction to set bail, this court, after hearing arguments from both parties,[3] orders the defendant, Marvin Rohl, released from custody on ten thousand ($10,000) dollars bail with permission to post ten (10%) percent of the amount of bail in cash with the Manitowoc County Clerk of Circuit Court. We feel this amount is reasonable after considering the following factors: (1) the length of time the defendant has been incarcerated (seven years); (2) the defendant's financial ability to meet bail; (3) the nature and strength of the State's evidence against the defendant, and (4) the seriousness of the crimes for which the defendant can

[2] We also note, and counsel for the defendant informed this court, that if we denied the current petition, a request for a writ of habeas corpus would immediately be made. Had habeas corpus been brought, this court, having already determined that the defendant's conviction was unconstitutionally obtained, would have been obligated to grant the defendant's relief and release him from custody.

[3] When the State was asked to address the merits of the bail motion and inform the court of any information the State had which would bear on the defendant's bailability, the Assistant Attorney General representing the State indicated that she had information regarding considerations this court should take into account in fixing the amount of bail. She declined, however, to divulge such information to the court because of the contention that this court lacked authority.

be retried. Release on bail will be on the following conditions:

(1) The defendant shall not leave the State of Wisconsin without permission of this court or the trial court;

(2) The Manitowoc County Clerk of Circuit Court shall hold the bail funds until further order of this court;

(3) The State shall have ninety (90) days from the date of this decision to commence a new trial;

(4) If during the ninety (90) days the State decides not to retry the defendant, it shall inform this court, the trial court and the Manitowoc County Clerk of Circuit Court at which time, upon petition to this court, the defendant shall be released from bail and the funds returned to the persons posting the bail;

(5) If after the ninety (90) day period the State has not commenced a new trial, upon petition to this court, the defendant shall be released from bail, and the funds shall be returned to the persons posting the bail;

(6) If the State files a petition for review of this court's decision in *Rohl v. State, supra,* within the time period allowed for review, the ninety (90) day period shall be stayed. The defendant, however, shall remain on bail pending a decision by the supreme court on the merits of the appeal or unless the supreme court directs otherwise. If the supreme court denies the petition for review, the State then has ninety (90) days from the date of denial of the petition to review to commence a new trial, and the defendant shall remain on bail during this ninety (90) day period or until the State notifies this court, the trial court and the Manitowoc County Clerk of Circuit Court that it will not retry the defendant. If the State determines that it will not retry the defendant or the State has not commenced a new trial during the ninety (90) day period, whichever comes first, upon petition to this court, the defendant shall be released from bail and the bail funds returned to the persons posting the bail;

(7) If the supreme court grants the petition for review in *Rohl v. State, supra,* the defendant shall remain on bail pending a decision on the merits or unless the supreme court directs otherwise. If the supreme court affirms our decision that the defendant is entitled to a new trial, the State again has ninety (90) days from the date of the decision to commence a new trial. If the State determines it will not retry the defendant or the State has not commenced a new trial within ninety (90) days, upon petition to this court, the defendant shall be released from bail and the bail funds returned to the persons posting bail.

*By the Court.*—Motion for release on bail granted.

BODE, J. (*Dissenting*). I dissent from the decision and order of this court for the following reasons.

The majority has construed the defendant's petition to be a petition for bail pending a new trial. I believe this construction is erroneous and view the petition as one seeking bail pending an appeal. In *Rohl v. State,* No. 78–121–CR (Ct. of Appeals, decided April 6, 1979), this court unanimously determined that the conviction for which the defendant is presently incarcerated was obtained in violation of his constitutional rights. Accordingly, the mandate in the decision remanded the cause to the trial court with directions to grant the defendant's motion for a new trial, vacate the conviction, and order that a new trial be held within a reasonable time or the defendant be released from custody. The court's mandate did not itself vacate the judgment. Such action was directed to be taken by the trial court when it again obtains jurisdiction upon receipt of the remittitur. *State v. Neutz,* 73 Wis.2d 520, 522, 243 N.W.2d 506, 507 (1976).

Under Rule 809.26, the remittitur is transferred to the trial court thirty-one days after the decision of the court of appeals is filed unless a petition to review is filed in the supreme court within the thirty days permitted un-

der Rule 809.62(1). If a petition to review is filed within the thirty days, further proceedings in the court of appeals are stayed as is the transmittal of the remittitur. Rules 809.62(3) and 809.26.

In the instant case, the thirty days in which to file a petition for review have not passed, and the remittitur has not been transmitted to the trial court. Therefore, being without jurisdiction, the trial court has taken no action on the directions in this court's opinion, and the judgment of conviction has not been vacated. Because the conviction has not been vacated, I submit the majority errs in determining that the defendant is in the same position he was prior to trial and is entitled to pretrial bail under sec. 969.01, Stats.

It is my position that the appeal from the defendant's conviction and post-conviction motions is still pending and will remain pending until the happening of one of the following events:

(1) The State fails to file a petition for review in the supreme court within the thirty days provided by Rule 809.62;
(2) The State files a petition to review within the required time and the supreme court denies the petition;
(3) The State's petition for review is granted and the supreme court renders its decision in the matter.

Since I view the appeal as still pending and construe the defendant's petition as one seeking bail pending appeal, I would deny the petition on the grounds that this court lacks the jurisdiction to grant the requested relief.

While it is true that an appeal divests the trial court of jurisdiction to act on the subject matter of the appeal, *Austin v. Ford Motor Co.*, 73 Wis.2d 96, 103, 242 N.W.2d 251, 254 (1976), the trial court nevertheless retains jurisdiction in matters not directly concerned with the ap-

peal, particularly when provided by statute. *State ex rel. Freeman Printing Co. v. Luebke,* 36 Wis.2d 298, 302–03, 152 N.W.2d 861, 863 (1967).

Rule 809.31(1) deals with bail pending appeal and specifically requires the motion to be filed in the trial court. Inasmuch as the present appeal is still pending, the proper place to have brought the instant petition is the circuit court for Manitowoc County. This view is reinforced by the recent supreme court opinion of *State v. Whitty,* 86 Wis.2d 380, 388–89, 272 N.W.2d 842, 846 (1978), wherein the court described the procedure to be followed by a defendant seeking release on bond pending appeal.

 (1) A defendant convicted of a felony who seeks release on bond pending appeal first files a motion seeking such relief with the trial court pursuant to Rule 809.31(1), Stats.

 (2) The trial court's order disposing of the motion is reviewable by the court of appeals upon that court granting permission to appeal pursuant to Rule 809.50 from an order which is not appealable as of right under sec. 808.03(1), Stats. Rather than considering the matter *de novo,* the court of appeals merely reviews the trial court's discretionary determination.

 (3) Further review is obtainable upon this court granting a petition to appeal filed pursuant to Rules 809.62 and 808.10, Stats., from an adverse decision of the court of appeals.

This procedure clearly contemplates petitions of this sort being initiated at the trial court level with the court of appeals reviewing that court's decision in the exercise of its discretion. Neither the rule nor this format provide for bail petitions to be brought first in the court of appeals.

The majority notes there would be some problem in having a motion heard at the trial court level because various judges in Manitowoc County have either been in-

volved in the case or have recused themselves. I do not view this problem as insurmountable and do not believe it furnishes sufficient justification for this court to take the action it has today. I believe an impartial judge could be assigned to hear the appropriate motion without undue delay.

The majority further asserts that it takes the present action pursuant to sec. 752.37, Stats., which grants the court of appeals "power and authority to enforce its judgments and determinations and to exercise its jurisdiction." I do not perceive the present issue as questioning the right of this court to enforce its judgments and determinations, nor do I think the present action is necessary to achieve that end. This court's decision in *Rohl v. State, supra,* remanded the cause to the trial court with specific instructions on actions to be taken. The time for transmittal of the remittitur not having arrived, the trial court has not yet had an opportunity to act on those instructions. This is not a situation where the trial court has refused to carry out the mandate.

On the other hand, as previously stated, the trial court does have jurisdiction to entertain a motion for release on bond pending appeal. The release of the defendant is the result sought here, and one which I do not object to— provided the release is obtained in a proper manner. A proper manner, I submit, includes an evidentiary hearing concerning the advisability of releasing the defendant and the terms and conditions of such a release. Rule 809.31(2)–(4). This hearing should be held in the trial court where the motion is to be brought. Nevertheless, even if this court was the proper forum, the hearing conducted on the petition before us did not address such considerations. As a result, the court lacked the information necessary to make a well-informed determination on the issue of the defendant's release.

In my judgment, the defendant's petition should be denied.

*(On petition for supervisory writ.)*

On April 20, 1979, the State requested a supervisory writ from the supreme court and a stay of our order and decision granting bail. The stay was granted and a hearing on the supervisory writ was scheduled for April 27, 1979 in the supreme court.

After being informed that this court's order granting bail had been stayed, the defendant filed a petition for a writ of habeas corpus. The petition was granted, and we ordered the defendant released on ten thousand ($10,-000) dollars bail with ten (10%) percent cash pending a return on the writ which was scheduled for April 23, 1979. The State then filed a second request for a supervisory writ and a stay of the writ of habeas corpus releasing the defendant on bail pending the return. The stay was granted and an order was issued staying any court from releasing the defendant on bail pending further order of the supreme court.

On April 27, 1979, a hearing on both supervisory writs was held in the supreme court. After the hearing, the supreme court issued the following order remanding the matters back to this court for a bail hearing.

The application of petitioner for a supervisory writ having come on for hearing, and the petitioner having appeared by Assistant Attorney General Kirbie Knutson, and the respondents by Attorney James Glover,

It is ordered that the order of the Court of Appeals admitting the respondent Marvin Rohl to bail, and the habeas corpus order of Hon. Clair Voss to the same effect, are vacated in their entirety.

It is further ordered that this matter is remanded to the Court of Appeals for a bail hearing forthwith to determine the amount and conditions of bail while the decision on the merits remains subject to the jurisdiction of the Court of Appeals, provided in the alternative that

the Court of Appeals may refer the matter to the circuit court for Manitowoc County, for a bail hearing to be governed by the provisions of sec. (rule) 809.31, Stats.

*(On remand from the supreme court for a bail hearing.)*
Before Voss, P.J., Brown, J., and Moser, J.

BROWN, J. The decision today is made pursuant to the order of the supreme court.

A person accused of a crime and awaiting trial has a constitutional right to reasonable bail. The amount should be determined solely in reference to the purpose of bail, namely, to assure the appearance of the accused when it is his duty to appear to answer the criminal prosecution. *Whitty v. State,* 34 Wis.2d 278, 286, 149 N.W. 2d 557, 560 (1967) ; sec..969.01(4), Stats. The defendant, in this case, is in the same position as any other defendant awaiting trial. His prior conviction was held invalid and he awaits a new trial. Therefore, he is entitled to bail under sec. 969.01(1), Stats.

The factors to be considered in determining bail were originally set out in *Whitty v. State,* 34 Wis.2d at 286, 149 N.W.2d at 560, and are now codified in sec. 969.01 (4), Stats. We must consider the following eight factors in determining the amount and conditions of bail.

1. *The Ability of the Arrested Person to Give Bail*

The defendant is presently in prison and has been in prison for seven years. He has not been part of the income producing public. Therefore, he has no means of giving bail himself. While a number of persons in the Green Bay community are willing to post bail, they are not wealthy people and do not have the financial means of meeting high bail.

## 2. *The Nature and Gravity of the Offense and Penalty*

The defendant was originally charged with first-degree murder, sexual perversion, robbery and arson. His pretrial bail was set at $20,000 on first-degree murder, $5,000 on robbery, $5,000 on arson and $5,000 on sexual perversion. After the preliminary hearing, the sexual perversion count was dismissed. After trial, the robbery charge was dismissed. The defendant was found guilty of third-degree murder and arson. On retrial, he can only be charged with third-degree murder and arson. *See, Green v. United States,* 355 U.S. 184 (1957) ; *State v. Hill,* 30 Wis. 416, 423 (1872). Under the laws in force at the time the defendant was originally charged, the crime of third-degree murder was punishable by not more than fifteen years, and the crime of arson was also punishable by not more than fifteen years. After his first conviction, the defendant was sentenced to twenty-five years. If reconvicted, the defendant could be sentenced to a maximum of twenty-five years in the absence of identifiable conduct on the part of the defendant occurring after the original sentencing which justifies a harsher sentence. *See, North Carolina v. Pearce,* 395 U.S. 711, 726 (1969). Since the defendant has already served seven years in prison, if reconvicted and resentenced to a total of twenty-five years, the most the defendant would have to serve before his mandatory release date would be four years. This calculation takes into account credit for time served, statutory good time and industrial good time. Therefore, the defendant is in a significantly different position now than he was when first charged. He is also in a significantly different position than others charged with third-degree murder and arson.

### 3. *The Defendant's Criminal Record*

No prior criminal record was presented.

### 4. *The Character, Residence and Health of the Defendant*

We have considered the alleged threat made by the defendant that the first person he was going to get was Sue Nelson, the chief prosecution's witness. We have considered the allegations of crank phone calls which have been made in the past to officers of the court and police officials and their possible source. We have considered the alleged pressure by the Rohl family upon witnesses, and we have also considered the alleged pressure placed on the State's witnesses by a certain defense counsel not involved in this bail proceeding. On the other hand, we have considered the fact that Mr. Rohl does enjoy some community support and does have employment opportunities. We have considered the fact that the defendant has no intention of returning to the Manitowoc community where the State's witnesses reside. We have also considered the fact that when Mr. Rohl was informed that members of his family were threatening and pressuring the State's witnesses, the threats and pressure stopped.

### 5. *Strength of the State's Evidence*

In considering the strength of the State's evidence, we note first of all that Sue Nelson's testimony was considered credible at the first trial and may very well be considered credible at a second trial. We have also examined the claim that Mr. Rohl has written letters in which he allegedly confessed to the murder. We have contemplated the assertion that the prosecution, as a result, feels that this case may now be stronger than it was originally.

We have reviewed disclosure of a possible recantation by the former assistant district attorney regarding his

affidavit admitting knowledge concerning the ownership of the flashlight.

### 6. *Whether Defendant is Already on Bail*

Since the defendant has been in prison for seven years, we consider this criteria to be inapplicable to this case for obvious reasons.

### 7. *Whether the Defendant has in the Past Forfeited Bail or is a Fugitive From Justice*

There is no information that any incident of this nature has ever taken place.

### 8. *Policy Against Unnecessary Detention of the Defendant Pending Trial*

We have analyzed this policy and concluded that detention would not be necessary in this case to insure the defendant's appearance at trial.

In view of the fact that the defendant is being held under a judgment of conviction which was obtained in violation of his constitutional rights and is, therefore, entitled to bail pending a new trial, and after considering all of the above discussed factors and information, this court orders the defendant, Marvin Rohl, released from custody on ten thousand ($10,000) dollars bail with permission to post ten (10%) percent of the amount of bail in cash with the Manitowoc County Clerk of Circuit Court. Release on bail will be on the following conditions:

(1) The defendant shall not leave the State of Wisconsin without permission of this court or the trial court; and if Mr. Rohl goes into Manitowoc County for any purpose whatsoever he must personally advise the sheriff's office when he enters the

county and must personally notify the sheriff's office when he leaves the county;

(2) The Manitowoc County Clerk of Circuit Court shall hold the bail funds until further order of this court;

(3) The State shall have 90 days from the date of this decision to commence a new trial;

(4) If during the 90 days the State decides not to retry the defendant, it shall inform this court, the trial court and the Manitowoc County Clerk of Circuit Court, at which time upon petition to this court, the defendant shall be released from bail and the funds returned to the person posting the bail;

(5) If after the 90 day period the State has not commenced a new trial, upon petition to this court, the defendant shall be released from bail and the funds shall be returned to the persons posting the bail;

(6) If the State files a petition for review of this court's original decision in *Rohl v. State* within the time period allowed for review, the 90 day period shall be stayed. The defendant shall, however, remain on bail pending a decision by the supreme court on the merits of the appeal or unless the supreme court directs otherwise. If the supreme court denies the petition for review, the State then has 90 days from the date of denial of petition to review to commence a new trial, and the defendant shall remain on bail during this 90 day period or until the State notifies this court, the trial court and the Manitowoc County Clerk of Circuit Court that it will not retry the defendant. If the State determines that it will not retry the defendant or the State has not commenced a new trial during the 90 day period, whichever comes first, upon petition to this court, the defendant shall be released from bail and the bail funds returned to the persons posting the bail;

(7) If the supreme court grants the petition for review in *Rohl v. State*, the defendant shall remain on bail pending a decision on the merits or unless the supreme court directs otherwise. If the supreme court affirms our decision that the defendant is entitled to a new trial, the State again has 90

days from the date of decision to commence a new trial. If the State determines it will not retry the defendant or the State has not commenced a new trial within 90 days, upon petition to this court the defendant shall be released from bail and the bail funds returned to the person posting the bail;

(8) The defendant shall- refrain from any contact in any way, personal or otherwise, with any potential witness of the prosecution or any party involved be it a prosecutor, a court official, or a police officer. This provision shall not be read to inhibit his counsel from effective representation.

*By the Court.*—Motion for release on bail granted.