STATE of Wisconsin, Plaintiff-Respondent,

v.

Charles E. BROWN, Defendant-Appellant-Petitioner.

Supreme Court

*No. 77-475-CR. Argued March 4, 1980.—Decided May 6, 1980.*

(Also reported in 291 N.W.2d 528.)

For the appellant-petitioner the cause was argued by *Charles Bennett Vetzner*, assistant state public defender, with whom on the brief was *Richard L. Cates*, state public defender.

For the respondent the cause was argued by *Pamela Magee-Heilprin*, assistant attorney general, with whom on the brief was *Bronson C. La Follette*, attorney general.

WILLIAM G. CALLOW, J. Following a jury trial, the defendant, Charles E. Brown, was convicted of armed robbery on July 19, 1973, and was sentenced to the Wisconsin state prison system for an indeterminate term not to exceed twenty-five years. On appeal, we affirmed the judgment of conviction in an unpublished per curiam opinion dated September 30, 1975. *Brown v. State,* 69 Wis.2d 805, 233 N.W.2d 491 (1975). Thereafter, the defendant filed a motion for postconviction relief pursuant to sec. 974.06, Stats., 1975, contending that his constitutional right to present a defense was violated by the trial court's exclusion of exculpatory hearsay statements. The trial court denied the defendant's motion, and the court of appeals affirmed the trial court's order. *State v. Brown,* 85 Wis.2d 341, 270 N.W.2d 87 (Ct. App. 1978). On January 16, 1979, we granted the defendant's petition to review the court of appeals' decision, and we now affirm.

On November 8, 1972, two men went to the Camelot East apartment house in Milwaukee and, on the pretext of desiring to rent an apartment, were permitted to enter the manager's apartment. Upon entering, one man pulled out a revolver from under his jacket and demanded money from the manager and her friend. The two men then bound and gagged the women and left, taking, in addition to the money, a clock radio, a television set, and, as described in the complaint, a "Panasonic combination stereo and radio."

Three days later, the women separately identified the defendant's picture out of a series of eight police photographs as that of one of the robbers. The following day, the women identified the defendant at a lineup. At the defendant's trial, both women again identified the defendant as one of the robbers.

The defense sought to establish that the defendant was not one of the robbers through the testimony of James Melvin Holmes, Jr., whom the defendant had met the day before the trial as they were handcuffed together awaiting separate court appearances. Holmes would have testified that on either the day of or the day after the robbery he was visited by Marvin Chiles and Alfred Willis; that he had known Willis for about two or three weeks; and that Willis wanted Holmes to buy a Panasonic radio system which Willis claimed they had just "ripped off" from a woman who was supposed to be the manager of the Camelot East apartments. Holmes also would have testified he bought the Panasonic set and that it was subsequently stolen from his apartment. Holmes' descriptions of Chiles and Willis in the offer of proof generally matched the robbers. Holmes did not know the whereabouts of Chiles or Willis. Defense counsel noted their names were not listed in the phone directory. Holmes claimed he was living with his girl friend when he purchased the Panasonic radio. However, he did not know her present address or whereabouts at the time of trial.

After hearing argument from both sides, the trial court rejected the offer of proof because it was uncorroborated hearsay and because "the testimony of the witness called in during the offer of proof is inherently . . . unworthy of belief and testimonially untrustworthy under all of the circumstances presented."

The defendant was found guilty of armed robbery and appealed the judgment of conviction, contending that, during the questioning of a witness, the prosecutor had

implied that he knew facts contrary to those related in the witness's testimony. Because these questions were withdrawn and a curative instruction was given, this court found no prejudicial effect on the direct appeal.

Sometime thereafter, defendant filed a motion for post-conviction relief, alleging that the trial court improperly excluded Holmes' testimony, denying the defendant of his constitutional right to present a defense under the rule of *Chambers v. Mississippi*, 410 U.S. 284 (1973). He further renewed his claim that the prosecutor's questions had been prejudicial. As we have noted, the motion was denied. On appeal, the court of appeals held that Holmes' testimony was properly excluded under Wisconsin's hearsay rules in effect at the time of the trial and under federal constitutional standards. In affirming the circuit court, the appellate court placed emphasis on factors which "tend to deprecate the reliability of Holmes' testimony." *State v. Brown, supra* at 347. The court of appeals noted that Holmes could be considered a less truthful witness because he was then serving a sentence for armed robbery, *id.* at 348; that the offered testimony "was certainly not devastating to Holmes' penal interest," *id.* at 349; and that the trial judge was in the best position to determine whether Holmes' testimony was reliable, having viewed Holmes' demeanor while testifying. *Id.* at 349. The court of appeals also noted that no corroborating evidence other than Holmes' testimony had been offered.

On this review, we will consider only the question of whether Holmes' hearsay testimony was properly excluded. We have recently held that issues previously considered on direct appeal cannot be reconsidered on a motion under sec. 974.06, Stats. *Beamon v. State*, 93 Wis.2d 215, 220, 286 N.W.2d 592 (1980). Thus the issue of whether the prosecutor's questions were prejudicial is not properly before this court.

In *State v. Johnson,* 60 Wis.2d 334, 339, 210 N.W.2d 735 (1973), and *State v. Sharlow,* 61 Wis.2d 388, 394–96, 212 N.W.2d 591 (1973), we held the Wisconsin Rules of Evidence, 59 Wis.2d Rvii (1973), inapplicable to cases tried before the rules' effective date, January 1, 1974. Prior to that date, hearsay statements against the declarant's penal interest were inadmissible. *State v. Johnson, supra; State v. Sharlow, supra* at 395. The defendant in the case at bar was tried and convicted in 1973. Thus if this case involved nothing more than the application of the hearsay rule, the exculpating statements of Chiles and Willis, as related by Holmes, would be inadmissible.

However, a strict application of the hearsay rule may deny a criminal defendant the fundamental right to a fair trial. "Few rights are more fundamental than that of an accused to present witnesses in his own defense." *Chambers v. Mississippi, supra* at 302. In that case the United States Supreme Court found that a criminal defendant was denied a trial in accordance with due process requirements because Mississippi's hearsay rule, which, like that of Wisconsin, barred testimony of statements against penal interest, had been "applied mechanistically to defeat the ends of justice." *Id.*

In *Chambers,* the defendant in a murder trial sought to prove his innocence by presenting the testimony of three witnesses who were told individually by another man, McDonald, that he had committed the crime in question. Applying Mississippi's hearsay rule, the trial court refused to allow the three witnesses to testify. The defendant was found guilty as charged, and on appeal, the Mississippi Supreme Court affirmed, upholding the trial court's evidentiary rulings.

Reversing the judgment of the state court, the Supreme Court refused to accept the state's argument for

retention of the penal-interest rule[1] as an absolute justification for the rule. Instead, the court noted that this policy had been the subject of considerable criticism and reversed Chambers' conviction, albeit on very narrow grounds:

"[W]e need not decide in this case whether, under other circumstances, [the penal-interest rule] might serve some valid state purpose by excluding untrustworthy testimony.

"The hearsay statements involved in this case were originally made and subsequently offered at trial under circumstances that provided considerable assurance of their reliability."

" . . . .

"[W]e hold quite simply that under the facts and circumstances of this case the rulings of the trial court deprived Chambers of a fair trial." *Id.* at 300, 303.

In addition to observing how "critical to Chambers' defense" the excluded testimony was, the court set out four considerations by which the excluded testimony was shown to be reliable. *Id.* at 302.

First, each of the declarant's confessions was made spontaneously to a close acquaintance shortly after the murder had occurred. Of the three factual components comprising this first consideration, spontaneity helped assure that the statements were made of the declarant's own free will. The relationship between the declarant and the recipient was relevant because a declarant should have a higher regard for the veracity of his statements when talking with his spouse, a relative, or a close friend than with a stranger. Additionally, the brief time lapse

---

[1] The state maintained that such testimony would frequently be perjured because confessions of criminal activity are often motivated by extraneous motivations. The Court noted: "There is, in the present case, no such basis for doubting McDonald's statements." *Chambers v. Mississippi*, 410 U.S. 284, 300 n. 20 (1973).

between the act in question and the statements against penal interest increased the likelihood that intervening events did not alter the declarant's desire or ability to tell the truth.[2]

The second consideration is the existence of corroboration "by some other evidence in the case" of hearsay statements made by the out-of-court declarant. *Id.* at 300. The court considered such evidence as the declarant's sworn confession, the testimony of an eyewitness to the crime (a shooting), the testimony that the declarant had been seen with a gun immediately after the shooting, and proof of the declarant's ownership of a gun similar to that used in the shooting. The court also noted that "[t]he sheer number of independent confessions provided additional corroboration for each." *Id.*

The third consideration to be applied to the facts of the case was the extent to which the hearsay statement is self-incriminatory and against the penal interest of the declarant. In making this assessment, trial courts may consider whether the statements were against the declarant's interest when made,[3] whether the exculpa-

---

[2] As might be expected, differing fact situations, viewed in light of this first *Chambers* consideration, have yielded differing rulings on a statement's admissibility. *See, e.g., United States v. Guillette,* 547 F.2d 743, 754 (2d Cir. 1976) (statement inadmissible because made four months after the act to someone declarant had recently met); *United States v. Pena,* 527 F.2d 1356, 1362 (5th Cir. 1976) (although made to a friend, statement lacked reliability because made several months after the act); *United States v. Brandenfels,* 522 F.2d 1259, 1264 (9th Cir. 1975) (statements inadmissible because made to defendant four to six weeks after declarant fled the country); *United States v. Oropeza,* 564 F.2d 316, 325 (9th Cir. 1977) (statement not spontaneous where made to defendant after declarant was arrested).

[3] *See, e.g.: United States v. Brandenfels, supra* at 1264 (statement inadmissible because "if [declarant] had already resigned himself to eventual apprehension and prosecution, the case against him was so overwhelming . . . that he had little to lose by exon-

tory portions of the statements relate to their disserving character, whether the declarant perceives the disserving quality of the statements, and whether the declarant was acting rationally when the statements were made.[4]

A fourth and quite significant consideration was the declarant's availability to testify at the time of trial. In *Chambers,* the declarant "was present in the courtroom and was under oath. He could have been cross-examined by the State, and his demeanor and responses weighed by the jury." *Id.* at 301.

The Supreme Court's articulation, in *Chambers,* of these considerations suggests the nature of an appropriate inquiry by a trial court when faced with the proffer of a third-party confession. They are not, however, exclusive, "exhaustive and absolute." *United States v. Guillette,* 547 F.2d 743, 754 (2d Cir. 1976). For example, in *Green v. Georgia,* 442 U.S. 95, 97 (1979), the Court found it "most important" that Georgia considered a witness's hearsay testimony sufficiently reliable to use it to incriminate the declarant and base a sentence of death upon it, but refused to admit the same statement to exculpate the defendant Green.

The decision whether the circumstances provide "considerable assurance," *Chambers v. Mississippi, supra* at 300, of the trustworthiness of a third-party confession lies within the sound discretion of the trial court which

---

erating [the defendant]"); *United States v. Oropeza, supra* at 325 (inadmissible as "[the declarant's] statement was merely a general assertion of [the defendant's] innocence rather than an assertion of his own culpability. There was nothing in it that would necessarily subject [the declarant] to criminal liability" [Footnotes omitted]).

[4] *See, e.g.: United States v. Guillette, supra* at 754 ("Moreover, [the declarant] made his confession while drinking with the informant, and evidence that [the declarant] had had a number of drinks casts additional doubt on the reliability of his declaration").

is best situated to weigh the reliability of the circumstances surrounding the declaration.[5] Consequently, this court will not reverse the trial court's decision unless it is clearly erroneous. In the case at bar, we conclude the trial court did not abuse its discretion or violate defendant's right to present a defense by excluding Chiles' and Willis's statements.

As the court of appeals noted, several factors exist which lend credibility to the exculpatory hearsay. The statements of Chiles and Willis were certainly against their penal interest. Additionally, the statements made by Chiles and Willis were made spontaneously and shortly after the robbery occurred, and roughly coincided with the testimony of the victim. However, Holmes had known Willis prior to buying the radio for only a period of a few weeks; there is no evidence to show he knew Chiles prior to the sale. Other than the account of the victim, Ruth Howland, no evidence independent of hearsay statements exists to corroborate Chiles' and Willis's account. There was no eyewitness testimony that the defendant had not participated in the robbery; Holmes could not produce the radio he purportedly purchased from the actual thieves; and Holmes' girl friend, who might have verified the purchase from Chiles and Willis and their account of the robbery, could not be called to testify because her whereabouts were unknown. Finally, the declarants Chiles and Willis, unlike the declarant McDonald in *Chambers,* were not available in the courtroom to testify before the jury, under oath, and subject to cross-examination. Indeed, as noted by the appellate court, there was no evidence other than Holmes' testimony to show that the declarants even existed.

We recognize that Holmes' testimony was critical to the defendant's case; for if Holmes' testimony and Chiles'

---

[5] *Accord: United States v. Guillette, supra* at 754; *United States v. Oropeza, supra* at 825.

and Willis's hearsay statements were believed, the defendant would be exculpated. However, we find the proffered third-party statements so lacking in assurances of trustworthiness that their exclusion was manifestly proper.

In reaching the same conclusion, the court of appeals and the trial court incorrectly addressed Holmes' credibility as a witness. The proper analysis under *Chambers* looks only to the trustworthiness of the out-of-court statement of the hearsay declarant. The testimony of the in-court witness who repeats the out-of-court declaration possesses the conventional indicia of reliability: The testimony is given under oath, impressing the speaker with the solemnity of his statements; the witness's word is subject to cross-examination; and his presence permits his demeanor and credibility to be assessed by the jury. Exclusion of the witness's testimony (and the hearsay statement) because of the trial court's doubts as to the witness's credibility constitutes a judicial assumption of the jury's function. Unless a witness's testimony is deemed incredible as a matter of law, the credibility of the witness is irrelevant in the trial court's determination of whether the proffered third-party statement should be admitted.[6] To the extent the court of appeals' decision employs a contrary practice, it is disapproved.

Our difference of approach does not affect the outcome of this case. The record indicates the trial court determined that the hearsay statements were inadmissible as lacking sufficient assurances of trustworthiness, notwithstanding his assessment of Holmes' credibility. As we have noted previously, such a determination clear-

[6] *See:* Note, *Declarations Against Penal Interest: Standards of Admissibility Under an Emerging Majority Rule*, 56 Boston U. L. Rev. 148, 178–79 (1976).

ly could not be considered an abuse of discretion. Accordingly, we affirm.[7]

*By the Court.*—The decision of the court of appeals is modified and, as modified, is affirmed.

---

[7] In a footnote, the defendant argues that "the right to be heard provision in Art. I, sec. 7 of the Wisconsin Constitution provides an additonal basis for concluding that the offer of proof should have been admitted into evidence." Defendant's brief at 13 n. 3. "It is, of course, within the power of this court to apply higher constitutional standards than those that are required of states by the federal constitution." *State v. Taylor,* 60 Wis.2d 506, 522, 210 N.W.2d 873 (1973). However, a defendant will be afforded greater constitutional rights only when "it is the judgment of this court that the Constitution of Wisconsin and the laws of this state require that greater protection of citizens' liberties ought to be afforded." *State v. Doe,* 78 Wis.2d 161, 172, 254 N.W.2d 210 (1977). The defendant has not argued that greater protections are needed; we are not convinced they are required in this case.