STATE of Wisconsin, Plaintiff-Respondent,

v.

Marvin ROHL, a/k/a Marvin Rosinsky, Defendant-Appellant.†

Court of Appeals

*No. 80–1969–CR. Submitted on briefs July 1, 1981.—Decided August 12, 1981.*
(Also reported in 310 N.W.2d 631.)

---

[9] *See* note 5 and accompanying text, *supra.*
† Petition for review dismissed.

78

For the defendant-appellant the cause was submitted on the brief of *Eric A. Stearn* of *Stearn Law Firm* of Sturgeon Bay.

For the plaintiff-respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Kirbie Knutson,* assistant attorney general.

Before Voss, P.J., Brown and Scott, JJ.

SCOTT, J.    After a jury trial, Marvin Rohl (also known as Marvin Rosinsky) was convicted of third-degree murder, contrary to sec. 940.03, Stats. (1969), and arson, contrary to sec. 943.02(1)(a), Stats., regarding the July 10, 1972 murder of Mary Glander in her apartment. He appeals from an order denying his motion for post-conviction relief pursuant to sec. 974.06, Stats. He argues that the trial court erred when it concluded that the State's failure to disclose certain allegedly exculpatory evidence had not deprived him of a fair trial. The evidence was that a key prosecution witness, Sue Nelson, had been unable to positively identify a flashlight found in Glander's apartment as being the one she had allegedly seen Rohl and his brother take into the apartment. Rohl also argues that the State's failure to disclose other evidence and the alleged ineffectiveness of his trial counsel deprived him of a fair trial. Finally, he argues that the judge who presided at the evidentiary hearing on his motion for post-conviction relief was prejudiced against him and that the trial court erred

when it refused to consider whether his conviction was based on perjured testimony. We affirm.

Rohl was convicted in 1972. At trial, the State's principal witness was Sue Nelson. She was thirteen years old at the time. Part of her testimony concerned a flashlight.[1] She testified that when she had accompanied Rohl, Randy Rosinsky (his brother) and Cindy Rosinsky (his sister) to Glander's apartment on the date of the crime, Randy had carried a silver flashlight and a pole. When they arrived at Glander's apartment, she and Cindy stayed in a park across the street from the apartment while Rohl and Randy entered the apartment. About twenty minutes later, Rohl and Randy came back out. Randy was still carrying the pole but not the flashlight. On cross-examination, Nelson testified that about four weeks before the trial, Rohl's mother had asked her to go to Glander's apartment and retrieve the flashlight but that she had not done so.

Before Nelson testified, a photograph of the crime scene had been introduced at trial. The photograph depicted a dresser which appeared to have been ransacked and a silver flashlight lying in an open dresser drawer. The flashlight itself was not introduced at trial. Although Nelson was never asked during trial whether the flashlight that was found in Glander's apartment and depicted in the photograph was the same one she had seen Rohl's brother carry into the apartment, the jury was left to infer that it was.

Rohl appealed his conviction and argued, among other things, that his conviction could not stand upon the uncorroborated testimony of an accomplice, Nelson, par-

[1] For additional summaries of Nelson's testimony at trial, see *Rohl v. State*, 64 Wis. 2d 443, 447–48, 219 N.W.2d 385, 386 (1974) (*Rohl* I); *Rohl v. State*, 90 Wis. 2d 18, 30–31, 279 N.W.2d 722, 726 (Ct. App. 1979) (*Rohl* II); and *Rohl v. State*, 96 Wis. 2d 621, 626–27, 292 N.W.2d 636, 639 (1980) (*Rohl* III).

ticularly since she had recanted her testimony. The supreme court affirmed the judgment of conviction. *Rohl v. State,* 64 Wis. 2d 443, 219 N.W.2d 385 (1974) (*Rohl* I). The court confirmed that a conviction could rest upon the uncorroborated testimony of an accomplice but stated that Nelson's testimony was corroborated. *Id.* at 449–50, 219 N.W.2d at 387. The court stated that although the flashlight was not introduced at trial to corroborate Nelson's testimony, "there was testimony at the trial that a flashlight did appear in a picture of the scene of the crime." *Id.* at 450, 219 N.W.2d at 388. The court additionally stated that Rohl's "most meritorious contention" was that on occasions before and after the trial, Nelson had recanted her testimony. *Id.* at 452–53, 219 N.W.2d at 389. The supreme court held that the trial court had not abused its discretion when it had ruled that Nelson's admission of perjury did not entitle Rohl to a new trial. *Id.* at 454, 219 N.W.2d at 390. The court stated that " 'a new trial may be based on an admission of perjury only if the facts in the affidavit are corroborated by other newly discovered evidence.' " *Id.* at 453, 219 N.W.2d at 389 (quoting *Nicholas v. State,* 49 Wis. 2d 683, 694, 183 N.W.2d 11, 17 (1971)). The court indicated that in Rohl's case:

The affidavit recanting Miss Nelson's testimony at the preliminary hearing was made before the trial. This affidavit was presented to the jury at trial and extensively argued. As to the recantation after trial, that consists of only a transcript of a conversation which allegedly took place between Sue Nelson and Attorney Kaminski and it is not even a sworn affidavit. The jury obviously chose to believe Sue Nelson's testimony on oath at trial and not the recanting affidavit. This was properly within its province as the trier of fact. The transcribed conversation about recantation is not under oath and there is no new evidence offered to support it. Such clearly falls below the requirements stated in *Nicholas v. State, supra.*

The trial judge is in a much better position to resolve the credibility and the weight to be given a recanting statement. He stated in deciding the postconviction motion:

"One significant thing about Sue Nelson's stories is that whenever she told a story under oath her story was consistent and whenever she was under the influence of her friend, Cindy Rosinsky or other members of that family, then she came up with a story that, no, this wasn't true at all, and each time I believe that she told a story consistent with innocence or lack of knowledge on her part, in the background was some member of the Rosinsky family and it was stated that they had done something to induce her to tell the story consistent with her lack of knowledge."

*Id.* at 453–54, 219 N.W.2d at 389–90.

In May 1977, Rohl filed a motion for post-conviction relief pursuant to sec. 974.06, Stats. He alleged he had been deprived of a fair trial because Nelson had testified falsely. Attached to the motion was a new affidavit of Nelson in which she again recanted her trial testimony. Rohl sought an evidentiary hearing in which he could prove his entitlement to a new trial. In November 1977, he amended his motion to include the conclusory allegation that prior to trial, the State had failed to divulge all exculpatory evidence within its possession.[2]

The trial court held a nonevidentiary hearing. During the hearing, Rohl introduced an affidavit of Patrick Harlow, who had been an assistant district attorney at the time of Rohl's trial and who had helped prosecute him. In his affidavit, Harlow stated that only one flashlight had been found in Glander's apartment, that the flashlight had been identified as Glander's and that it had been returned to her relatives and not submitted to the crime laboratory for analysis. Harlow further stated that he had been "personally involved in conducting an

---

[2] Prior to trial, Rohl had filed a general discovery demand pursuant to secs. 971.31(1) and 971.24, Stats.

identification session with . . . Nelson in which she was asked to identify the flashlight which the defendants allegedly took with them into the Glander residence" and that "on information and belief Miss Nelson was unable to identify said flashlight." At the conclusion of the hearing, the court ruled that the motion for post-conviction relief and the records of the action conclusively showed that Rohl was entitled to no relief. Without holding an evidentiary hearing, the court dismissed the motion.

Rohl appealed to this court. We reviewed the record and concluded that Rohl had shown by clear and convincing evidence that he was entitled to a new trial. *Rohl v. State,* 90 Wis. 2d 18, 279 N.W.2d 722 (Ct. App. 1979) (*Rohl* II). We stated that the record clearly showed the State had failed to disclose certain exculpatory evidence, namely, "that the flashlight found at the scene of the crime and depicted in the photograph was the victim's flashlight, it had not been sent to the crime lab for analysis, and was, in fact, returned to the victim's family long before trial." *Id.* at 33, 279 N.W.2d at 727. Since the Harlow affidavit was uncontroverted by the State, we assumed the truth of the factual matter asserted therein, and we remanded the case for a new trial.

The State appealed our decision. The supreme court held that Rohl was entitled to an evidentiary hearing. The court stated that by reaching the merits of the exculpatory evidence issue, by making findings of fact and by ordering a new trial instead of an evidentiary hearing, we had abused our discretion. *Rohl v. State,* 96 Wis. 2d 621, 628, 292 N.W.2d 636, 640 (1980) (*Rohl* III). The court emphasized that the issue of who owned the flashlight was important in this case but indicated that the issue was a question of fact which had not been resolved. *Id.* at 627–28, 292 N.W.2d at 640. The court set forth its disposition of the case as follows: "We re-

mand the case to the trial court for the purpose of holding an evidentiary hearing on the exculpatory evidence issue." *Id.* at 630, 292 N.W.2d at 641.

Upon remand, Rohl filed a timely request in the trial court for a substitution of judge at the evidentiary hearing.[3] At the same time, he filed a motion for Judge Allan Deehr, Chief Judge of the Fourth Judicial Administrative District and the district attorney who prosecuted Rohl in 1972, to recuse himself from assigning a new judge to preside at the evidentiary hearing. Rohl requested the Chief Justice of the Wisconsin Supreme Court to assign a judge from outside of the Fourth Judicial District to preside at the hearing.

Chief Judge Deehr did not recuse himself. On July 16, 1980, he assigned Judge Jerold Murphy from within the Fourth Judicial District to preside at the evidentiary hearing.[4]

On August 1, 1980, Rohl filed a second amended motion for post-conviction relief pursuant to sec. 974.06, Stats. The second amended motion incorporated by reference all of the previous amended motion and included the further allegation that Rohl had been denied effective assistance of counsel at trial.[5]

---

[3] Prior to filing this timely request in the trial court and after the supreme court had directed that the case be remanded to the trial court, Rohl filed a motion in the supreme court for a substitution of judge at the evidentiary hearing. The supreme court held that the motion was filed both prematurely and in the wrong court and, accordingly, denied the motion. *Rohl v. State,* 97 Wis. 2d 514, 293 N.W.2d 922 (1980).

[4] The Fourth Judicial Administrative District consists of the following circuit courts: Calumet County, Fond du Lac County, Manitowoc County, Sheboygan County and Winnebago County. Sec. 753.06(4), Stats.; SCR 70.17(4). Judge Murphy presides over Branch I of the Circuit Court for Fond du Lac County.

[5] In the motion, Rohl alleged that Attorney William Gigure had been appointed to represent him at trial but that Attorney Alan Eisenberg and Richard Habeck, a private detective who "worked very closely" with Eisenberg, had pressured him into having Eisen-

The evidentiary hearing commenced on September 22 and concluded on October 13, 1980. The only issue considered by the court was whether the State's failure to disclose allegedly exculpatory evidence concerning the ownership of the flashlight had deprived Rohl of a fair trial. The flashlight itself was introduced into evidence. At the hearing, Patrick Harlow testified that his affi-

---

berg substituted for Gigure only six days before the trial. Rohl alleged that Eisenberg had told Rohl's mother the following:

a) Mr. Eisenberg informed Mrs. Rosinsky that he was a "great criminal trial lawyer" and that with him, the Rohl brothers would surely be released.

b) That he needed this case and the clients because he just had his license to practice law reinstated and this case would mean a lot to him.

c) That he would agree to handle all of Marvin's and Randall's case for a total of $500.00.

d) That Mr. Eisenberg informed Mrs. Rosinsky that she should not inform Attorneys Gigure and Kaminski that he may take the case because he had a strategy that would "blow the case wide open."

e) That repeatedly, Mr. Eisenberg asked Mrs. Rosinsky if her husband, Myron Rosinsky, might have committed the crime. Despite the fact she consistently informed him that her husband was at home on the evening of the purported incident, Mr. Eisenberg kept insisting that she testify at the trial and that Myron Rosinsky committed the crime because it was a way of "getting even" with Myron for all the years of abuse that she suffered at Myron's hands. Moreover, she should be willing to trade the life of her "derelict" husband for the futures of her two sons.

Rohl further alleged that to induce him to have Eisenberg substituted as counsel, Eisenberg had met with him in the county jail two weeks prior to trial and had informed him

that he was a "great criminal trial lawyer," that he tried forty-two (42) murder cases and had only two convictions, that he had no doubt he "could get them off" and he would arrange with District Attorney Allen [sic] Deehr a plea bargain or a "deal that would get them out in a few days."

Rohl alleged that "aside from this single ten minute visit, Mr. Eisenberg never again interviewed his client prior to the trial" and that "Eisenberg did not interview a single witness before trial, including the State's key witness, Sue Nelson, despite the urging by

davit was incorrect insofar as it stated that the flash-
light had belonged to Glander, that it had been returned
to her family and that it had not been submitted to the
crime laboratory. In addition, Alan Eisenberg, Rohl's
attorney during the trial, testified that the prosecution
had "deliberately misled" him regarding the identifica-
tion of the flashlight found in Glander's apartment. He
testified that the prosecution had told both him and the
jury that the flashlight belonged to Rohl's family.

At the conclusion of the hearing, the trial court found
that Rohl had not been denied his right to a fair trial.
The court found that throughout the trial, neither the
State nor the defense had known who owned the flash-
light. The court further found that the flashlight had
been submitted to the crime laboratory and never given
to the Glander family, that the crime laboratory had
been unable to identify any fingerprints on it and that
the laboratory's report had been made available to the
defense prior to the trial. It found that Harlow's affi-
davit was unintentionally erroneous and had been based
upon his memory of events from approximately five

---

Mr. Gigure that her inherent lack of credibility and changing sto-
ries were the key issue at trial."

Rohl alleged that as a result of Eisenberg's lack of preparation
for trial, Eisenberg had conducted "fishing expeditions" with State
and defense witnesses at trial and had thereby introduced testi-
mony that had a highly prejudicial effect on the jury. Rohl fur-
ther alleged that Eisenberg had been so unprepared for trial that
he had asked Mrs. Habeck, who had been seated next to him during
the trial and who was not an attorney, what questions he should
ask of witnesses. He alleged that "Eisenberg's demeanor during
the trial and his conduct and disrespect for all witnesses had a
highly prejudicial effect on the jury."

Finally, Rohl alleged that Eisenberg's failure to effectively in-
terview him, his failure to investigate the circumstances of the
case and his failure to ask for a continuance to adequately prepare
for trial had deprived him of his right to effective assistance of
counsel.

years earlier. The court further found that Nelson's inability to identify the flashlight was not a fact that would tend to impeach her testimony and that the State's failure to disclose that fact was insignificant in view of the entire record of the case. It also found that Eisenberg's testimony was "totally incredible and not worthy of belief." The court entered an order denying Rohl's motion for post-conviction relief. He presently appeals from that order.

## ENTITLEMENT TO A NEW TRIAL

### A. State's Failure to Disclose Evidence of Nelson's Inability to Identify Flashlight

On this appeal, Rohl has abandoned the argument made previously to the trial court, to this court and to the supreme court that his constitutional right to a fair trial was violated by the State's failure to disclose that the flashlight found at Glander's apartment belonged to Glander. He does not challenge the trial court's finding that Harlow's statement in his affidavit that the flashlight had been identified as Glander's was erroneous. He does not challenge the trial court's finding that, in fact, the State did not know to whom the flashlight belonged. Instead, he argues that he was deprived of a fair trial by the State's failure to disclose that when law enforcement authorities had asked Nelson to identify from among a "line-up" of flashlights (which included the flashlight found at Glander's apartment) the flashlight she had seen Rohl and his brother take into the apartment, she was unable to do so. We agree with the trial court that Rohl failed to meet his burden of showing by clear and convincing evidence that he is entitled to a new trial.

On a motion for post-conviction relief pursuant to sec. 974.06, Stats., the defendant has the burden of proof. Sec. 974.06(6), Stats. The defendant must show his entitlement to relief by clear and convincing evidence. *Rohl v. State,* 90 Wis.2d 18, 28, 279 N.W.2d 722, 725 (Ct. App. 1979) (*Rohl* II).

A defendant's right to due process is not violated by the prosecution's failure to disclose evidence unless the evidence is within the prosecution's exclusive possession.

In *Brady v. Maryland,* 373 U.S. 83, 87 (1963), the Supreme Court of the United States held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment . . . ."

. . . .

*Brady* requires production of information which is within the exclusive possession of state authorities. Exclusive control will not be presumed where the witness is available to the defense and the record fails to disclose an excuse for the defense's failure to question him.

*State v. Sarinske,* 91 Wis.2d 14, 36, 280 N.W.2d 725, 735 (1979).

In the present case, the evidence of Nelson's inability to identify the flashlight was not within the prosecution's exclusive possession. The trial court found that Nelson was available to the defense both prior to and during the trial. The crime scene photograph that depicted a silver flashlight and that was introduced at trial was also available to the defense. The defense was, therefore, able to ask Nelson whether she could identify the flashlight depicted in the photograph as being the one carried by Rohl's brother.

Even if the State should have disclosed the evidence of Nelson's inability to identify the flashlight, we cannot say that Rohl is thereby entitled to a new trial. A

new trial is required only if disclosure of the evidence could have affected the jury's verdict. *Id.* at 36, 280 N.W.2d at 735. In the present case, we believe disclosure could not have affected the verdict.

Rohl argues that the testimony of Alan Eisenberg shows that the prosecution had deliberately led the defense and the jury to believe that Nelson had positively identified the flashlight. He argues that the trial court erred when it found that Eisenberg's testimony was "totally incredible and not worthy of belief." We disagree.

Findings of fact by the trial court will not be upset on appeal unless they are clearly erroneous and against the great weight and clear preponderance of the evidence. *Bank of Sun Prairie v. Opstein*, 86 Wis.2d 669, 676, 273 N.W.2d 279, 282 (1979). When the trial judge acts as the finder of fact, the judge is the ultimate arbiter of the credibility of the witnesses. *Id.* We believe the trial court's finding that Eisenberg's testimony was incredible is not against the great weight and clear preponderance of the evidence.

At the evidentiary hearing, Chief Judge Allan Deehr testified that at no time during his prosecution of Rohl had he attempted to hide from the defense any information regarding the ownership of the flashlight. Although Eisenberg testified to the contrary, the record of the proceedings at trial contains nothing to support that testimony. It shows that the prosecution never attempted to elicit testimony that the flashlight belonged to anyone in particular. Although Eisenberg testified that during the closing argument at trial Deehr had "harped" on the flashlight for half an hour and had argued that the flashlight belonged to Rohl's family, Eisenberg failed to cause the closing argument to be transcribed. We agree with the trial court that Eisenberg's testimony regarding the allegedly misleading closing argument "be-

lies his claimed expertise as a criminal trial lawyer," because any lawyer of that expertise would have objected to the argument. We further agree with the trial court that Eisenberg's failure to raise the issue of the allegedly misleading argument in his motions after verdict is significant. As the trial court stated, if the issue had been raised at that time, the court could have relied upon its memory of the argument instead of Eisenberg's testimony six years after the trial.

### B.   State's Failure to Disclose Other Evidence

At trial, Nelson testified that Rohl had told her he had taken a purse shaped like a fish from Glander's apartment. In addition, Frank Rebarchek, Jr. testified that seven days before Glander's murder, Rohl had "talked about knocking out an old lady . . . for money."

At the evidentiary hearing on his motion for postconviction relief, Rohl attempted to prove that the prosecution had failed to disclose exculpatory evidence relating to this testimony of Nelson and Rebarchek. The allegedly exculpatory evidence consisted of evidence that six days prior to trial, the police had discovered that the manufacturer of the fish purse had sold such a purse to someone in Rohl's family and evidence that the police had doubted whether Rebarchek's statements were truthful. The trial court refused to consider the issue of whether the State's failure to disclose this evidence had deprived Rohl of a fair trial. The court indicated that Rohl had not raised the issue in a timely fashion because, prior to the evidentiary hearing, he had not notified the State or the court of his intention to raise the issue at the hearing. The court permitted Rohl to make offers of proof on the issue.

On appeal, Rohl argues that the trial court erred when it refused to consider whether he was entitled to a new

trial due to the State's failure to disclose this other evidence. He argues that his offers of proof conclusively show that he is entitled to a new trial. We agree with the trial court that Rohl failed to raise the issue in a timely fashion.

"A trial court may allow a variance between the pleadings and the proof provided the variance does not mislead the opposing party to his prejudice." *Goldman v. Bloom,* 90 Wis.2d 466, 480, 280 N.W.2d 170, 176 (1979). The purpose of the rule is to insure that the parties are fairly apprised of the nature of the issues involved. *Id.* at 480, 280 N.W.2d at 177.

In the present case, the trial court was obviously concerned that the State would be prejudiced if Rohl were allowed to introduce evidence on an issue that he had not raised in his motion. We share that concern. We conclude that the trial court did not abuse its discretion when it refused to consider the untimely raised issue, and we do not need to consider whether, by his offers of proof, Rohl has met his burden of showing by clear and convincing evidence that he is entitled to a new trial.

## C. Effectiveness of Trial Counsel

During the evidentiary hearing, the trial court refused to consider the issue of whether Rohl had been denied effective assistance of counsel at trial. The court stated that the issue had not been timely raised by Rohl's second amended motion but permitted Rohl to make an offer of proof.

On appeal, Rohl argues that the trial court erred when it refused to consider the effectiveness of counsel issue. He argues that his offer of proof on this issue conclusively shows that he is entitled to a new trial. We do not consider Rohl's offer of proof because we conclude

that the trial court did not abuse its discretion when it refused to consider the issue.

■

It is within the discretion of the trial court whether to allow an amendment to the pleadings. *Stanhope v. Brown County,* 90 Wis.2d 823, 834, 280 N.W.2d 711, 715 (1979). The trial court's decision will not be reversed unless there has been a manifest abuse of discretion. *Id.* We believe it is also within the discretion of the trial court whether to allow an amendment to a motion for post-conviction relief pursuant to sec. 974.06, Stats.

Section 974.06 (4), Stats., provides:

> All grounds for relief available to a prisoner under this section must be raised in his original, supplemental or amended motion. Any ground finally adjudicated or not so raised, or knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence or in any other proceeding the prisoner has taken to secure relief may not be the basis for a subsequent motion, unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the original, supplemental or amended motion.

In the present case, Rohl filed his original and amended motions for post-conviction relief pursuant to sec. 974.06, Stats., in 1977. Those motions did not raise the issue of the effectiveness of trial counsel. Rohl first raised the issue in his second amended motion, which he filed on August 1, 1980. The record fails to show why Rohl could not have raised the issue in his 1977 motions.

The trial court found that from 1972 to 1980, Rohl had been represented at various times in this case by no less than eight different attorneys (in chronological order) : John Dewane (preliminary hearing), William Gigure (pretrial), Alan Eisenberg (trial, post-verdict motions and sentencing), Howard Eisenberg (appeal), Ronald Brandt (appeal), Ron Kaminski (motion for post-conviction relief pursuant to sec. 974.06, Stats.),

Howard Eisenberg (appeal), Stephen Glynn (appeal) and Richard Boltz (appeal). Rohl's ninth attorney, Eric Stearn, is the first attorney to raise the issue of whether Rohl was denied effective assistance of counsel at trial.

We believe the trial court did not abuse its discretion when it refused to permit Rohl to amend his motion for a second time to raise an issue which could have been raised in the previous amended motion filed three years earlier and which was entirely different from the issues that had been raised in the earlier motion.

### D. Trial Court's Failure to Order a New Trial in the Interest of Justice

Rohl argues that the trial court erred when it failed to order a new trial in the interest of justice. In his brief, he argues that "if this court does not order a new trial, its decision will be appealed and thoroughly exhausted requiring the defendant to pursue his remedy in federal court."

Section 752.35, Stats., authorizes this court to remand a case for a new trial "if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried . . . ." In Rohl's case, we believe the real controversy has been fully tried and that justice has not miscarried for any reason.

### ENTITLEMENT TO A NEW EVIDENTIARY HEARING

#### A. Trial Court's Alleged Prejudice Toward Rohl

Rohl argues that he is entitled to a new evidentiary hearing because Allan Deehr, Chief Judge of the Fourth Judicial District and the former district attorney who prosecuted him, refused to recuse himself from assign-

ing the judge to preside over the evidentiary hearing. He argues that Judge Jerold Murphy, the judge whom Deehr assigned, was "extremely prejudicial." Rohl points out that during the hearing, Judge Murphy twice asked his attorney whether he was reciting certain factual information from the record "for the benefit of the court or the benefit of the media." He also points out that after his attorney had asked a witness whether former Assistant District Attorney Patrick Harlow was the type of person who would make an affidavit "rationally," Judge Murphy stated: "I don't know what you're going into with that type of question. . . . [Y]ou are not going to impugn the integrity or legal acumen of anybody that has testified in these proceedings . . . ." Further, Rohl points out that after having dismissed the second amended motion for postconviction relief, Judge Murphy stated: "I don't know how many kicks at the cat the defendant is entitled to." Finally, he states in his brief that Judge Murphy "frequently prevented defendant's attorney from making proper inquiries and ruled against the defendant on every major motion."

Although we believe the better practice would have been for Chief Judge Deehr to have recused himself from appointing the judge to preside over the evidentiary hearing, we conclude that Rohl has failed to show that he was prejudiced by Chief Judge Deehr's assignment of Judge Murphy. The transcript of the evidentiary hearing shows, contrary to Rohl's contention, that Judge Murphy exhibited absolutely no prejudice toward Rohl or his attorney. Rohl received a very fair hearing.

### B. Trial Court's Failure to Consider Whether the Conviction was Based On Perjury

The trial court refused to consider the issue of whether Rohl's conviction was based on perjury because, in

its opinion, the issue had been presented to the jury, the judge who presided at the trial and the supreme court. Rohl argues that the trial court's refusal was error and that he is entitled to a new evidentiary hearing at which he can present evidence regarding whether his conviction was infected by perjury. We disagree.

Issues previously considered on direct appeal cannot be reconsidered on a motion under sec. 974.06, Stats. *State v. Brown,* 96 Wis.2d 238, 241, 291 N.W.2d 528, 531 (1980).

A reading of the opinion of the supreme court in *Rohl v. State,* 64 Wis.2d 443, 219 N.W.2d 385 (1974) (*Rohl* I), demonstrates that the issue of whether Rohl is entitled to a new trial because his conviction was based on perjured testimony was considered by both the trial judge and, on direct appeal, by the supreme court. Although Rohl presently relies upon a recanting affidavit of Nelson which she made at a more recent date than the one which was read to the jury at trial and which was argued to the trial judge and the supreme court, the record shows that her new affidavit is different from her earlier one in no material respect. Just as in his direct appeal, Rohl offers no new evidence to support the recanting affidavit.

Further, even if the perjury issue could be reconsidered, we believe Rohl waived the right to argue the issue. When the supreme court remanded the case to the trial court for an evidentiary hearing, the court limited the hearing to "the exculpatory evidence issue." Rohl v. State, 96 Wis.2d 621, 630, 292 N.W.2d 636, 641 (1980) (*Rohl* III). The record fails to show that Rohl ever moved the supreme court under Rule 809.64, Stats., to reconsider that portion of its opinion which limited the evidentiary hearing to the exculpatory evidence issue.

*By the Court.*—Order affirmed.