STATE of Wisconsin, Plaintiff-Respondent,

v.

John Mann ANDERSON, Defendant-Appellant.†

Court of Appeals

*No. 86–0612–CR. Submitted on briefs October 7, 1986.—Decided February 17, 1987.*

(Also reported in 404 N.W.2d 100.)

† Petition to review granted.

For the plaintiff-respondent the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general, with *John J. Glinski,* assistant attorney general of counsel.

For the defendant-appellant the cause was submitted on the briefs of *William J. Tyroler,* assistant state public defender.

Before Moser, P.J., Wedemeyer and Sullivan, JJ.

WEDEMEYER, J. John Anderson appeals from a judgment convicting him of possession of a short-barreled shotgun, sec. 941.28, Stats., possession of a

firearm by a felon, sec. 941.29(2), Stats., and habitual criminality, sec. 939.62, Stats.[1] John also appeals an order denying his postconviction motion for a new trial. Because the trial court erred in excluding a statement against interest made by John's brother, Luther Anderson, and because such error was not harmless, we reverse.

Luther Anderson was gambling in the basement of Cadillac Willie's bar on the night of March 9, 1985, while John was upstairs drinking. Thinking that a man cheated him out of three dollars, Luther pulled out a short-barreled shotgun from his briefcase and pointed it at the individual who allegedly owed him the money. John came downstairs, grabbed the gun from his brother and told the man to run. John and Luther then left the premises. John was carrying Luther's briefcase containing Luther's gun and refused to give the briefcase back to Luther in light of Luther's intentions to use the gun. While walking, John spotted a cruising patrol car and abandoned the briefcase a short distance away. The police arrested them after the briefcase was discovered. When questioned, both brothers denied that they knew each other and John gave a false name. John was charged with possession of a short-barreled shotgun, possession of a firearm by a felon and obstructing an officer. Luther was not charged and was released from custody.

John, who testified to the above facts, was the only defense witness at trial. His defense rested on the assertion that his possession of the shotgun was privileged because it was necessary for the protection

---

[1]John was also convicted of obstructing an officer, contrary to sec. 946.41(1), Stats., but he does not appeal that conviction.

of a third person. He sought to shore up his defense with a statement Luther had given to their mother and John's attorney to the effect that he had intervened during the dice game to prevent Luther from shooting someone. Luther gave the statement to his mother the day after the incident. John could not produce Luther at trial because he avoided the process server. Their mother was also unable to testify due to health-related problems. The trial court refused to grant a continuance to allow the mother to recover or John's attorney to withdraw and testify.

The trial court held that Luther's out-of-court statement to his mother was hearsay, and concluded that since the statement was not corroborated, it was not an admissible statement against interest. The jury found John guilty of all charges. The court denied John's motion for a new trial.

John argues that he was denied his right to present the defense of privilege when the court excluded Luther's statement at trial. John also argues that the court erred in denying his motion for a new trial.

Generally, the decision of the trial court concerning the admissibility of hearsay evidence rests within its sound discretion and will not be reversed unless it is misused or based upon an erroneous view of the law. *State v. Buelow,* 122 Wis. 2d 465, 476, 363 N.W.2d 255, 261 (Ct. App. 1984). Because the trial court is best situated to weigh the reliability of the circumstances surrounding a third party's statement against interest, the decision whether the circumstances provide considerable assurances of trustworthiness of the confession so as to allow its admission lies within the court's sound discretion. *State v. Brown,* 96 Wis. 2d

238, 245–46, 291 N.W.2d 528, 532–33, *cert. denied,* 449 U.S. 1015 (1980). Consequently, this court will not reverse the lower court's decision unless it is clearly erroneous. *Id.* at 246, 291 N.W.2d at 533.

Section 908.045(4), Stats., provides as follows:

> 908.045 Hearsay exceptions; declarant unavailable. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> . . . .
>
> (4) Statement Against Interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability or to render invalid a claim by the declarant against another or to make the declarant an object of hatred, ridicule, or disgrace, that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true. *A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborated.* [Emphasis added.]

In *Chambers v. Mississippi,* 410 U.S. 284, 302 (1973), the United States Supreme Court stated that "[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense." Due process requires that "where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice." *Id.* The question whether a rule of evidence has been mechanistically applied to deny due process must be decided on a case-by-case basis. *State v. McConnohie,* 121 Wis. 2d 57,

272

72–73, 358 N.W.2d 256, 264 (1984). With these precepts in mind, we address the question of whether Luther's statement against penal interest was sufficiently corroborated so that its exclusion deprived John of a fair trial.[2]

■

Corroboration is required of a statement against penal interest to "indicate the trustworthiness of the statement." Fed. R. Evid. 804(b)(3). Our supreme court has indicated that, based on *Chambers:*

> The following four factors are to be considered in ascertaining the trustworthiness of any such testimony:
>
> 1. time of the statement and the party to whom the statement was made;
> 2. existence of evidence corroborating the statement;
> 3. extent to which the statement is self-incriminating and against penal interest;
> 4. presence of declarant in courtroom to testify if necessary.

Ryan v. State, 95 Wis. 2d 83, 96, 289 N.W.2d 349, 355 (Ct. App. 1980).

Luther made the incriminating statement to his mother on the day after the incident and upon his release from jail. The fact that the statement was made to Luther's mother "impart[s] a greater likelihood of veracity to it." *State v. Pepin,* 110 Wis. 2d 431,

---

[2]Because the trial court's main reason for excluding Luther's statement was that it was uncorroborated, we assume for the purposes of our analysis that Luther was unavailable as a witness.

440, 328 N.W.2d 898, 902 (Ct. App. 1982). *See Brown,* 96 Wis. 2d at 243–44, 291 N.W.2d at 532:

> The relationship between the declarant and the recipient [is] relevant because a declarant should have a higher regard for the veracity of his statements when talking with his spouse, a relative, or a close friend than with a stranger. Additionally, the brief time lapse between the act in question and the statements against penal interest increased the likelihood that intervening events did not alter the declarant's desire or ability to tell the truth. [Footnote omitted.]

Luther's statement thus has circumstantial guarantees of trustworthiness under the first *Chambers* factor.

Contrary to the trial court's ruling, Luther's statement was also corroborated by independent evidence sufficient to establish his culpability. A court "should only ask for sufficient corroboration to 'clearly' permit a reasonable man to believe that the statement *might* have been made in good faith and that it *could* be true." 4 J. Weinstein & M. Berger, *Weinstein's Evidence,* para. 804(b)(3)[03], at 804–141 (1985) (emphasis added and footnote omitted). At least that much corroboration exists here.

Luther was arrested two blocks from Cadillac Willie's bar. The briefcase had Luther's name on it and contained Luther's personal papers. The shotgun handle was protruding from the briefcase at the time of the arrest, which supports John's testimony that he quickly put the gun in the briefcase after taking it away from Luther. Luther's statement that John took his gun away from him to prevent him from shooting a

bar patron is perfectly consistent with and is corrobo-
rated by John's testimony at trial.

The trial court emphasized the fact that at the time of their arrest both John and Luther denied knowing each other and denied possessing the briefcase. Upon this basis, the court determined that neither could be trusted and therefore Luther's subsequent statements were untrustworthy. Any reliance by the court on John's credibility as a witness, however, is misplaced. The trial court failed to take into account that

> [e]xclusion of the witness's testimony (and the hearsay statement) because of the trial court's doubts as to the witness's credibility constitutes a judicial assumption of the jury's function. Unless a witness's testimony is deemed incredible as a matter of law, the credibility of the witness is irrelevant in the trial court's determination of whether the proffered third-party statement should be admitted.

*Brown,* 96 Wis. 2d at 247, 291 N.W.2d at 533 (footnote omitted). It was therefore inappropriate for the trial court to independently assess John's credibility.

In addition, the court placed too much emphasis on the reliability of Luther's statement. Mere credibility of testimony standing alone entails no hearsay dangers; assessing credibility is the jury's function. "Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." *Buelow,* 122 Wis. 2d at 479, 363 N.W.2d at 262–63 (citation omitted). To interpret the statement against interest exception too stringently divests it of utility. "The corroboration requirement should not be used as a means of usurping the jury's

function." 4 *Weinstein's Evidence,* para. 804(b)(3)[03], at 804–147.

The third *Chambers* factor is the extent to which the statement is self-incriminating and against penal interest. The trial court erred in stating that Luther's statement would not tend to subject him to criminal liability. There are several offenses that Luther could be charged with, based on his statement, that would subject him to criminal liability: possession of a short-barreled shotgun, sec. 941.28, Stats.; reckless use of weapons, sec. 941.20(1)(c), Stats.; endangering safety by conduct regardless of life, sec. 941.30, Stats., and so on. Luther's statement was certainly against his penal interest.

Lastly, *Chambers* cites as an indicia of trustworthiness the fact that the declarant is present in the courtroom to testify if necessary. Under sec. 908.045(4), Stats., notably, the declarant must always be unavailable in order for the exception to apply and the hearsay statement to be admissible. In *Chambers,* however, the declarant admitted several times that he committed the crime the defendant was being tried for, but then changed his story, alleging an alibi. Availability of the declarant was thus important because of doubts about the truthfulness of the extrajudicial statements; he could be cross-examined by the state and the jury could weigh his demeanor and responses. 410 U.S. at 301.

Here, given Luther's consistent statement and the existence of independent corroborating evidence, his lack of availability to testify at trial was not so crucial. *But cf. State v. Sharlow,* 110 Wis. 2d 226, 235, 327 N.W.2d 692, 697 (1983) (without the opportunity to cross-examine declarant on his out-of-court statement, the jury would have been seriously hindered in

assessing truth of statement). In excluding the evidence at trial, the trial court here remarked that if Luther's statement were true, he surely would have appeared in court to testify to protect his brother. Luther's unavailability, however, paradoxically provides an assurance of trustworthiness; his success in avoiding John's subpoena indicates that he knew his statement was true and that it was against his penal interest. *See United States v. Benveniste*, 564 F.2d 335, 341 (9th Cir. 1977) (declarant's assertion at trial of her fifth amendment right "lends strong support to the conclusion that her testimony would tend to subject her to criminal liability").

The trial court thus misused its discretion in excluding Luther's out-of-court statement, and its assessment of the trustworthiness of Luther's statement is clearly erroneous. Our previous analysis shows that the statement contained considerable assurances of trustworthiness and was hence admissible.

We must address the further question whether the trial court's error was harmful, requiring reversal. *See State v. Dyess*, 124 Wis. 2d 525, 540, 370 N.W.2d 222, 230 (1985). Under this test, reversal is only required when there is a reasonable possibility that the error contributed to the conviction. *Id.* at 543, 370 N.W.2d at 231–32. A reasonable possibility is a possibility sufficient to undermine our confidence in the outcome. *Strickland v. Washington*, 466 U.S. 668, 694, *reh'g denied*, 467 U.S. 1267 (1984).

We hold that reversal is required because there is a reasonable possibility that the exclusion of the

exculpating statement contributed to John's conviction. If the trial court had admitted Luther's statement, either in the form of an affidavit[3] or by adjourning the trial to allow the mother to testify, there is at least a reasonable possibility that the jury would have believed John's defense that Luther owned the gun and briefcase and that he, John, only possessed the gun to ensure that Luther would not shoot anyone. The error was thus harmful.

Because we reverse, we are also required to assess whether there is sufficient evidence to sustain John's conviction of possession of a short-barreled shotgun and possession of a firearm by a felon upon retrial. *See State v. Ivy,* 119 Wis. 2d 591, 610, 350 N.W.2d 622, 632 (1984). When the sufficiency of the evidence is challenged, the test is whether this court can conclude that the trier of fact could reasonably be convinced that the defendant was guilty beyond a reasonable doubt. *State v. Lossman,* 118 Wis. 2d 526, 540, 348 N.W.2d 159, 166 (1984) (citations omitted). Reversal of the conviction is only required where the evidence is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact acting

---

[3]At the hearing on his motion for a new trial, John sought to introduce his mother's affidavit, the pertinent portion of which stated:

3. At that time Luther of his own accord told me the following: that on the night of March 9, 1985 he got into an argument about gambling with another patron in the basement of Cadillac Willie's tavern. He was drunk and pulled a gun on the patron. There were a number of other patrons present. It was Luther's gun, and he carried it in a briefcase. John grabbed the gun from him and put it back in the briefcase. At John's insistence they left and were arrested soon afterwards on the street.

reasonably could be convinced beyond a reasonable doubt. *Id.* at 540–41, 348 N.W.2d at 166 (citation omitted). We review the evidence most favorably to the jury's findings. *State v. Toy,* 125 Wis. 2d 216, 222, 371 N.W.2d 386, 389 (Ct. App. 1985).

■

Viewing the evidence adduced at trial most favorably to the state, we conclude that a reasonable jury could reasonably be convinced that John was guilty beyond a reasonable doubt of possession of a short-barreled shotgun and possession of a firearm by a felon. The evidence at trial was not so insufficient in probative force and value that the jury could not be convinced of John's guilt beyond a reasonable doubt. We thus reverse and remand for a new trial consistent with our reasoning above. We do not reach John's contention that the court erred in denying his motion for a new trial.

*By the Court.*—Judgment and order reversed and cause remanded.